HUDSON COUNTY CIRCUIT COURT.

THEODORE SKRATT, PLAINTIFF, v. PRIMO CARNERA, DEFENDANT.

Decided November 24, 1934.

For the applying creditor, Adrian Bonnelly, *Marcus E. Donnelly.*

For the defendant, *John J. Treacy.*

BROWN, C. C. J. The defendant moves to vacate an order heretofore entered permitting one, Bonnelly, to file as applying creditor an alleged claim against the defendant and secondly that the claim of Bonnelly is not liquidated and therefore not cognizable before this court. From the proofs it appears that Adrian Bonnelly, a member of the bar of the State of Pennsylvania, performed legal services for the defendant, Carnera. The services were of a miscellaneous character and evidently the charges made therefor were not ascertained by agreement. The affiant, Bonnelly, alleges that the charge and reasonable value of such services was $2,500. Bonnelly, in March of 1931, undertook to collect his claim against the defendant, Carnera, by issuing an attachment out of a court of the State of Pennsylvania against property alleged to be owned by Carnera and located in that state. The attachment resulted in a judgment in favor of Bonnelly against Carnera for the sum of $3,113.50. It appears that Carnera did not enter an appearance in the Pennsylvania

court and that he was a non-resident of that state when the judgment under the attachment was entered. The plaintiff, Skratt, in the month of June, 1934, obtained a writ of attachment out of this court and attached the rights and interest of the defendant in moneys alleged to be on deposit by him in a bank in Hudson county. After those moneys were attached under the writ last mentioned Bonnelly applied to this court for an order permitting him to appear as an applying creditor for the purpose of having satisfied his judgment. On an *ex parte* application made by Bonnelly for a rule to be admitted as an applying creditor, Bonnelly stated that the defendant was indebted to him for a sum, stating the amount. The proceeding of Bonnelly against Carnera in the State of Pennsylvania was a proceeding *in rem* and the judgment entered in that proceeding was not a personal judgment but affected only property belonging to the defendant located in the State of Pennsylvania and which was the subject-matter of the attachment. The judgment in the State of Pennsylvania has no binding force upon the defendant other than to affect the property that was attached. *Pennoyer* v. *Neff*, 95 *U. S.* 714. There are two propositions that seem to be clearly established where a proceeding in attachment results in a judgment. One is that the judgment of the court though in form a personal judgment against the defendant has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted and no suit can be maintained on such a judgment in the same court or in any other court nor can the judgment be used as evidence in any proceeding not affecting the attached property. Second, the court in such a suit cannot proceed unless the officer finds some property of the defendant on which to levy the writ of attachment. *Freeman* v. *Alderson,* 119 *U. S.* 185. In the case of *Schenck* v. *Griffin,* 38 *N. J. L.* (at *p.* 465), it was held that no action can be brought on a judgment recovered on an attachment in another state and that in an action on the original demand a judgment in attachment is not competent as *prima facie* evidence of the indebtedness. A judgment in attachment obtained by Bonnelly against the defend-

ant, Carnera, in the State of Pennsylvania has no binding effect upon the defendant in this state. In this state a writ of attachment cannot be issued where the damages are unliquidated. *Hackscher* v. *Trotter,* 48 *Id.* 419; 5 *Atl. Rep.* 581; *Robinson* v. *Mellon,* 2 *N. J. Mis. R.* 1184; 126 *Atl. Rep.* 863. Section 6 of the Attachment act (1 *Comp. Stat.* 1910, *p.* 136; *Pamph. L.* 1901, *p.* 158) provides:

"Any creditor of the defendant, whether his debt be due or not, upon filing with the clerk an affidavit made by himself or his agent that the defendant owes to him a debt, stating the amount, may enter in the minutes of the court at any time, as of course, a rule admitting him as an applying creditor under the attachment."

If there is excluded from the affidavit of the applying creditor the reference to the judgment obtained in the State of Pennsylvania there remains in his affidavit proof in effect that the defendant is indebted to him for a reasonable sum for services rendered. The claim is not a liquidated claim. The statute requires the applying creditor to state the amount of his claim. In the case of *Smith* v. *Warden,* 35 *N. J. L.* 346 (at *p.* 350), it was held that the applying creditor is only required to make and file an affidavit that the defendant in attachment owes him "a certain sum," while section 6 of the Attachment act (1901), permits the applying creditor to file his debt, "whether his debt be due or not." Considering the language used in the case of *Smith* v. *Warden, supra,* at first glance it would appear that the phrase "a certain sum" means that the claim should be liquidated. A reference to the Attachment act from its early enactment in this state and the amendments thereto and supplements thereof leads to the conclusion that at the time the opinion was rendered in the Smith case the language under the Attachment act concerning applying creditors was different from the Attachment act that effects this proceeding. According to the case of *Hanness* v. *Smith* (1848), 21 *Id.* 497, in construing the Attachment act then in effect it was held:

"There is nothing in the statute which limits the judgment to the amount of the claim filed nor indeed does it require the creditor to specify or even file the amount of his

claim \* \* \*. By the twenty-fifth section of the Attachment act, R. S. 53, the auditors are directed to audit and adjust the demands of the plaintiff and applying creditors, and to ascertain the sums due them respectively."

In the year 1854 a supplement was enacted to the Attachment act providing (laws of 1709-1868, page 45, section 2) :

"2. It shall be lawful for any creditor or creditors of any defendant in attachment, upon filing with the clerk an affidavit that the defendant or defendants in attachment owes unto him or them a certain sum, to be therein specified, which affidavit shall be made by such creditor or his agent, to enter at any time a rule in the minutes of the court out of which a writ of attachment may have been issued, admitting such creditor or creditors as creditor or creditors under such attachment, and which said rule shall have the same force and effect as though the same had been entered in open court."

This supplement was in effect when the opinion in Smith v. Warden was handed down. The court in that case evidently referred to the very language of the statute when it stated that an applying creditor should file an affidavit declaring that "a certain sum" was due to him. The Attachment act of 1901, section 6, page 160, does not contain this language as to the sum being certain. This act provides in effect that any creditor whether his debt is due or not may file an affidavit that the defendant owes him a debt "stating the amount" and thereupon may enter a rule in the minutes of the court admitting the creditor as an applying creditor. Generally an attachment suit is considered a harsh remedy. In many jurisdictions an attaching creditor is regarded with less favor than he formerly was when an attachment of a debtor's property was the only mode of compelling an appropriation of it to the payment of his debts. This is particularly true in view of the fact that an attaching creditor gains a preference over other creditors. It is the policy of the law in very many cases, especially where there is insolvency, to favor an equal distribution of the effects of a debtor among all of his creditors. It is for this reason that an attaching creditor was held to comply strictly with the Attach-

ment act. This same reasoning does not apply in the case of an applying creditor. He is in the nature of an intervenor. He acts on the principle that the goods of the defendant are in legal custody and are for the benefit of all the creditors of the defendant. 1 *Shinn on Attachment* 743, § 402. This principle can well be applied to the 1901 Attachment act, that is to say, an applying creditor receives no preference and is entitled to his *pro rata* share together with other applying creditors of the residue of the moneys of the defendant after the payment of the attaching creditor's claim. The applying creditor under our procedure is required to prove his claim so that even though the amount is unliquidated all that he can recover is the amount that is due him. Where the Attachment act of 1901 directs that any creditor of the defendant may be admitted as an applying creditor it means any creditor whether his claim is liquidated or unliquidated may become such and all that such creditor is required to do is to state that a debt is owing to him, stating the amount. This does not mean a liquidated amount.

The motion to vacate the order heretofore admitting Bonnelly as an applying creditor will be denied.