Hudson County Circuit Court.

ELMER JOHNSON, Jr., PLAINTIFF, v. FLORENCE E. WOOD,
AS EXECUTRIX OF THE LAST WILL OF JOHN G. WOOD,
DECEASED, DEFENDANT.

Decided December 18, 1936.

For the rule, *Collins & Corbin* (*Edward A. Markley* and
*James J. Langan*).

*Contra, Elmer Johnson, Jr., pro se.*

BROWN, C. C. J. This is an application by defendant to have a writ of attachment quashed and the attachment proceedings dismissed on the following grounds:

1. The transfer by the holder of the shares of stock sought to be attached has not been enjoined, as provided for in section 13 of the Uniform Stock Transfer act (*Pamph. L.* 1916, *p.* 398; *Cum. Supp. Comp. Stat.* 1911-1924, § 47-162) and, therefore, said attachment is not valid.

2. The auditor appointed by this court by order dated May 22d, 1936, has failed to file his report as provided for in section 21 of the Attachment act, although more than two months have passed since the return of the writ.

3. There is not present in the State of New Jersey any property of the defendant, and, therefore, the writ of attachment cannot be executed.

4. The *situs* of the shares of stock on which attempt was made to attach is in Rockingham county, New Hampshire, where the will of the late John G. Wood was probated and where Florence E. Wood, who was appointed executrix of the last will of John G. Wood, deceased, resides.

5. The Attachment act of 1901, under which this suit was instituted, does not authorize the attachment of property of an executrix appointed under the laws of a foreign state for the debts of said executrix incurred after the death of the testator.

6. The statutes of the State of New Jersey do not confer upon plaintiff a right to sue defendant, a foreign executrix, in her representative capacity in the courts of this state.

7. The alleged claim on which the plaintiff seeks to recover is not liquidated.

The facts before the court on this application are contained in the writ of attachment; the jurisdictional affidavit of plaintiff filed at the time the writ was issued; depositions taken by defendant in New Hampshire; a certified copy of the ancillary proceedings instituted by the plaintiff in the Court of Chancery of New Jersey. No depositions were filed by the plaintiff. In lieu thereof affidavits taken *ex parte* without notice were filed. While there is nothing in these affidavits which would change the conclusions of the court

if it were to accept as true the allegations contained therein, nevertheless, the court cannot consider them as they were taken *ex parte* without notice. The Supreme Court has frequently held that on the return of a rule to show cause why a writ of attachment should not be quashed, *ex parte* affidavits taken without notice should not be considered. *Robinson* v. *Mellon*, 2 *N. J. Mis. R.* 1184; 126 *Atl. Rep.* 863. From the record before the court it appears that on December 26th, 1934, John G. Wood, a resident of Exeter, New Hampshire, died and letters testamentary were issued to his sister, Florence E. Wood, by the Probate Court of Rockingham county, New Hampshire. At the time of his death the decedent was the owner of two hundred fifty (250) shares of common stock and sixty (60) shares of preferred stock of the International Harvester Company, a corporation of New Jersey. Both John G. Wood and Florence E. Wood have at all times been residents of the State of New Hampshire, and his estate is in the process of administration in the Rockingham County Probate Court. Elmer Johnson, Jr., claims he is owed a debt of seven thousand one hundred twenty-six dollars and fifty cents ($7,126.50) by the defendant, which arose in the following manner: Florence E. Wood, as executrix, employed the plaintiff to conduct an investigation and to assist in a certain action pending in the United States District Court for the Southern District of New York, in which suit the said Florence E. Wood, as executrix, was substituted as a party plaintiff; that in consideration of the services to be rendered by him the said Florence E. Wood, as executrix, agreed to pay his disbursements in connection with said investigation, if the same were incurred and to recompense him for said services; that in reliance upon such promise he proceeded to render services up to and including February, 1936, but that Florence E. Wood, as executrix, has refused and neglected to pay disbursements incurred by him and that by reason of the failure to pay said disbursements plaintiff is unable to continue to render services to her. Johnson alleges that he has made disbursements or incurred necessary charges in connection with said services in the sum of one thousand one hundred twenty-six dollars and fifty cents

($1,126.50) for which he says he has received no reimbursement; that the reasonable value of the services rendered by him to Florence E. Wood, as executrix, as aforesaid, is the sum of six thousand dollars for which he claims he has received no payment. On April 8th, 1936, Elmer Johnson, Jr., filed an affidavit with the county clerk of Hudson wherein he stated that Florence E. Wood, as executrix of the last will of John G. Wood, is not a resident of the State of New Jersey and she is indebted to him in the sum of seven thousand one hundred twenty-six dollars and fifty cents ($7,126.50) as nearly as he can specify. A writ of attachment issued out of the Hudson County Circuit Court, and an attempt was made by the sheriff to attach shares of stock of the International Harvester Company which are in New Hampshire and assets of the New Hampshire estate by serving a copy of the writ on an officer of the Hudson Trust Company, registered agent of the International Harvester Company, at Hoboken, New Jersey. The writ was returnable on May 5th, 1936. On May 22d 1936, an order was entered appointing an auditor and requiring publication. No further steps have been taken by the plaintiff, except that an affidavit and brief were filed by plaintiff as attorney *pro se,* in opposition to this motion to quash. On April 15th, 1936, Elmer Johnson, Jr., obtained from the New Jersey Court of Chancery an order directing the International Harvester Company and Florence E. Wood, executrix of John G. Wood, to show cause why an injunction should not issue restraining both from transferring certain shares of common and preferred stock in the International Harvester Company and held by the executrix as part of the estate of her decedent. The order imposed a temporary restraint on the International Harvester Company, from paying dividends and transferring the shares on its books. Vice-Chancellor Kays has decided that this restraint should be continued until the further order of the court, but no order has been entered continuing the restraint. No order or injunction has been obtained restraining the executrix Florence E. Wood, from transferring the shares. Section 13 of the Uniform Stock Transfer act (*Pamph. L.* 1916, *p.* 398; 1 *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 693, § 47-162) provides:

"Section 13, No Attachment or Levy Upon Shares Unless Certificate Surrendered or Transfer Enjoined.—No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."

One of the methods given by this section must be followed in order to validate an attachment or a levy on shares of stock. *Mulock* v. *Ulizio,* 102 *N. J. L.* 251; 131 *Atl. Rep.* 622; *Wallach* v. *Stein,* 102 *N. J. L.* 517; 133 *Atl. Rep.* 81; *affirmed,* 103 *N. J. L.* 470; 136 *Atl. Rep.* 209. Admittedly the certificate representing the shares of stock has not been "actually seized by the officer making the attachment" nor has it been "surrendered to the corporation which issued it." The third method given by the Uniform Stock Transfer act, section 14 (*Cum. Supp. Comp. Stat.* 1911-1924, § 47-163), by which an attachment upon shares of stock may be validated is an injunction out of a court of appropriate jurisdiction against the transfer of the certificates by the holder. Has the plaintiff obtained an injunction against the transfer of the certificate by the holder? The holder of the certificate is Florence E. Wood, executrix of the last will of John G. Wood, deceased. The injunction does not purport to operate against the executrix but restrains the International Harvester Company from transferring the stock on its books and from paying dividends to the holder. If a transfer on the books of the International Harvester Company were a prerequisite to any transfer of the certificate by the holder, it would be arguable that an injunction against the company would satisfy the requirements of section 13 of the Uniform Stock Transfer act. By such circuity the transfer of the certificate might be effectively enjoined. But if there exists a recognized means of transferring the certificate without the necessity of a transfer on the books of the corporation then an injunction against the International Harvester Company is

not a compliance with section 13 since a transfer by the holder is not enjoined. Section 1 of the Uniform Stock Transfer act provides (*Cum. Supp. Comp. Stat.* 1911-1924, § 47-160):

"Section 1. How Title to Certificates and Shares May Be Transferred.—Title to a certificate and to the shares represented thereby can be transferred only,

a. By delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

b. By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

This section permits the executrix to transfer the title to the certificate and the shares thereby represented by a delivery of the certificate endorsed or by a delivery of the certificate and a separate assignment. It specifically negatives the necessity of a transfer on the books of the company. The purpose of section 1 is made apparent in a note by the commissioner on uniform state law found in 6 *Uniform Laws Annotated* 2, which follows:

"The provisions of this section are in accordance with the existing law (see *Cook on Corporations,* §§ 373 *et seq.*), except that the transfer of the certificate is here made to operate as a transfer of the shares, whereas at common law it is the registry on the books of the company which makes the complete transfer. The reason for the change is in order that the certificate may, to the fullest extent possible, be the representative of the shares. This is the fundamental purpose

of the whole act, and is in accordance with the mercantile usage. The transfer on the books of the corporation becomes thus like the record of a deed of real estate under a registry system."

Thus the injunction issued against the International Harvester Company is totally inadequate to satisfy the mandate of section 13, that the transfer of the certificate by the holder be enjoined. That section in its most liberal interpretation requires an injunction that will prevent the valid transfer by the holder. An attachment upon shares of stock is ineffective unless the holder be enjoined from transferring the certificate by a court having jurisdiction over him. *Amm* v. *Amm,* 117 *N. J. Eq.* 185. Since no injunction has been issued which prevents Florence E. Wood from making a transfer of the certificate there is no compliance with section 13 of the Uniform Stock Transfer act. Section 21 of the Attachment act (1 *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 101, § 14-21), provides:

"On the return of the writ, the court shall appoint an auditor to adjust and ascertain the amounts due to the plaintiff and each of the applying creditors; the auditor shall have power to administer oaths and to examine witnesses touching the demands of the plaintiff and creditors; and at the expiration of two months from the return of the writ he shall make and file a report of the amounts so ascertained; * * *."

In *Little* v. *Long,* 93 *N. J. L.* 99; 107 *Atl. Rep.* 412, it was said by the Supreme Court (at *p.* 99):

"The procedings [attachment] are statutory and out of the course of the common law, and result in taking the property of a defendant in an *ex parte* proceeding, *in invitum,* and therefore must be strictly pursued."

The Supreme Court in *Black* v. *Emack,* 11 *N. J. Mis. R.* 363; 166 *Atl. Rep.* 513, held that the failure of an auditor to make and file a report as required by section 21 of the Attachment act is sufficient grounds for quashing the writ. While it is true that the plaintiff in the Black case showed a lack of diligence in prosecuting his action, the decision is none the less a holding that a failure to comply strictly with the statute is sufficient reason for quashing the writ. In the

case *sub judice* more than seven months have elapsed since the return of the writ and no report has been filed by the auditor. The plaintiff, Elmer Johnson, Jr., has exhibited a lack of diligence in his failure to commence publication in accordance with the order entered in this cause on May 22d, 1936. Prior to the enactment of the Uniform Stock Transfer act and the decision in *First National Bank of Boston* v. *Maine*, 284 *U. S.* 312, the right to attach a non-resident's stock in a New Jersey corporation was recognized under certain circumstances. A case dealing with the question is *Cord* v. *Newlin*, 71 *N. J. L.* 438; 59 *Atl. Rep.* 22. In that case Mr. Justice Dixon, speaking for the Supreme Court, said (at *p.* 440) :

"When corporate stock is so far subject to the control of the corporation that its formal transfer cannot be perfected without the action of the corporation, process of garnishment may be effectually served upon the corporation at its domicile. Such process warns the corporation not to perfect any transfer without the permission of the court, and thus subjects that matter to the jurisdiction of the court. What effect this will have upon the title of a subsequent *bona fide* purchaser for value need not now be considered."

Sections 1 and 13 of the Uniform Stock Transfer act, *supra,* and the decision of the United States Supreme Court in *First National Bank of Boston* v. *Maine, supra,* have had a radical effect on the right to attach a non-resident's stock in a New Jersey corporation. In the last mentioned case it was held :

"* * * Ownership of shares by the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts. *The Delaware Railroad Tax,* 18 *Wall.* 206, 229, 230; *Rhode Island Trust Co.* v. *Doughton,* 270 *U. S.* 69, 81; *Eisner* v. *Macomber,* 252 *Id.* 189, 213, 214. And this interest is an incorporeal property right which attaches to the person of the owner in the state of his domicile."

It is to be noted that in *Cord* v. *Newlin supra,* it is stated that the stock may be attached when it is so far subject to the control of the corporation that its formal transfer cannot be perfected without the action of the corporation. · Since the enactment of section 1 of the Uniform Stock Transfer act, the transfer can be accomplished without any action on the part of the corporation. *Klein* v. *Wilson & Co., Inc.* (*D. C. N. J.,* 1924), 7 *Fed. Rep.* (2d) 769; affirmed on opinion, 7 *Id.* 777. The change in the law effected by the case of *First National Bank of Boston* v. *Maine, supra,* was recognized by our Court of Errors and Appeals in the case of *Miller* v. *McCutcheon,* 117 *N. J. Eq.* 123; 175 *Atl. Rep.* 155. It, therefore, appears that the *situs* of the shares of stock is in New Hampshire and·there is not present in this state any property of the defendant which can be attached.

Another question presented by the motion in this case is whether an attachment lies against the property of a decedent in the case of a debt contracted by an executor after the death. A brief review of the legislative history of the Attachment act is necessary for a proper determination of this ground to quash the writ of attachment in the instant case. The original Attachment act was passed March 8th, 1798 (see revision of *William Paterson* published 1800 by Matthias Day, pages 296 to 302). Section 1 provided for attachment against absconding debtors, and section 26 for attachment against absent debtors. Those sections remain the same in the revision printed for the state by Joseph Justice in 1821 (see Revision of 1821, pages 355-364). They read as follows:

"1. Be It Enacted by the Council and General Assembly of this State, and It Is Hereby Enacted by the Authority of the Same, That if any creditor shall make oath or affirmation before any judge of any of the courts of record of this state, or justice of the peace of any county in the same, that he verily believes, that his debtor absconds from his creditors, and is not, to his knowledge or belief, resident in this state at that time, then it shall be the duty of the clerk of the Supreme Court, or of the court of common pleas, to issue a writ of attachment, to be directed to the sheriff or coroner, as the case may require, and returnable to the next term, command-

ing him to attach the rights and credits, moneys and effects, goods and chattels, lands and tenements of such debtor, wheresoever they may be found; which oath or affirmation shall, prior to the sealing of the said writ, be delivered to the said clerk, to be by him filed in his office. (Revision 1821, page 355.)

"26. And Whereas debtors, who reside out of this state, may have property sufficient within the same to pay their debts, or some part thereof, be it therefore further enacted, that the rights and credits, moneys and effects, goods and chattels, lands and tenements, of every debtor, who may reside out of this state, shall be liable to be attached, taken, proceeded against, sold, assigned, transferred and conveyed, for the payment of his debts, in the like manner, as nearly as may be, as the rights and credits, moneys and effects, goods and chattels, lands and tenements of other debtors are made liable by this act: Provided, That instead of the oath or affirmation hereinbefore mentioned, the applicant for such writ of attachment shall, before the sealing thereof, make oath or affirmation [which shall be filed in the office of the clerk of the court, out of which the same shall be issued] before any judge or justice aforesaid, that the person, against whose estate such attachment is to be issued, is not, to his knowledge or belief, resident at that time in this state, and that he owes to the plaintiff a certain sum of money, specifying, as nearly as he can, the amount of the debt or balance." (Revision of 1821, pages 361, 362.)

Such were the provisions of sections 1 and 26 in 1835, when Chief Justice Hornblower, in *Haight* v. *Executors of Bergh,* 15 *N. J. L.* 183, held (at *p.* 184), that a proceeding by attachment against executors and administrators was not authorized either by section 1 or section 26 of the Attachment act then in existence. The decision in *Haight* v. *Executors of Bergh, supra,* was followed by the Supreme Court (1890) in *Muller* v. *Leeds,* 52 *Id.* 366; 19 *Atl. Rep.* 261. Section 1 of the original Attachment act remains the same in the Revision of 1847 (Revision of 1847, page 48), but section 26 in the Revision of 1821 becomes section 40 of the Revision of 1847. Section 40 of the Revision of 1847 becomes section 3

in the Revision of 1896, section 1 remaining the same. When the Attachment act was re-written in 1901, sections 1, 2 and 3 of the Revision of 1896 were all placed together as section 1 (1 *Comp. Stat., p.* 133; *Pamph. L.* 1901, *p.* 158). Therefore, it is clear that substantially the provisions of sections 1 and 26 of the original Attachment act are embodied in section 1 of the current act, and it follows that since the decision in *Haight* v. *Executors of Bergh, supra,* a proceeding by attachment against executors and administrators was not authorized either by section 1 or section 26 of the original Attachment act, it is not now authorized under section 1 which embodies the provisions of sections 1 and 26 of the act of 1798 substantially. Section 27 of the original Attachment act provided for attachment against the estate of joint debtors. This is now section 3 of our Attachment act. There is no claim of a joint debt in this case. In the revision published in 1847, section 44 was added to the Attachment act, providing as follows:

"That the writ of attachment may be issued against the heir or devisee of any deceased debtor in all cases in which the writ might lawfully have been issued against such debtor in his lifetime; and all lands, tenements, hereditaments and real estate descended from or devised by such deceased debtor to the heir or devisee against whom the attachment is issued may be attached and taken by virtue of the said writ." (Revision of 1847, page 59.)

See *Jordan* v. *Moore,* 82 *N. J. L.* 552; 82 *Atl. Rep.* 850. This appears as section 8 in the Revision of 1874. When the Attachment act was re-written in 1901, section 8 became section 5 in an amended form, the important amendment being that provision was made for the issuance of the writ for the debt of a deceased debtor against his executor in all cases in which the writ might have issued against such debtor immediately prior to his decease. Section 5 remains in this form to-day, being as follows:

"5. Attachment for Debt of Deceased Debtor Against Executor, Etc.; Distribution of Proceeds.—Attachments may issue for the debt of a deceased debtor against his executor, administrator, trustee, heir or devisee in all cases in which

the writ might have issued against such debtor immediately prior to his decease, and all real estate descended from or devised by him to the heir or devisee may be attached; and his personal estate in the hands of the executor, administrator, trustee, or other person may be attached, and the executor, administrator, trustee, heir and devisee, and such other person or any or all of them, may be joined as defendants in the same action; provided, that in the distribution of the proceeds of any attachment so issued against the executor, administrator, trustee, heir or devisee, the plaintiff shall not be preferred, but shall share ratably with the applying creditors; a legacy or distributive share of an estate in the hands of the executor, administrator or trustee may be attached in an action against the legatee or next of kin for his debt." *Pamph. L.* 1901, *p.* 159; 1 *Comp. Stat., p.* 136.

It is apparent that section 5 does not provide for attachment in the case of a debt contracted by an executor after testator's death. It provides only for the issuance of the writ in the case of a debt contracted by testator prior to his death. This specific question apparently has not been passed upon as yet by the courts of this state. However, in the case of *C. Cedar Cove* v. *Staub,* 10 *N. J. Mis. R.* 120; 158 *Atl. Rep.* 97, the Supreme Court held:

"We think the affidavit was insufficient It apparently is issued under the fifth section of the Attachment act of 1901 (*Comp. Stat., p.* 136), which enacts that attachments may issue for the debt of a deceased debtor against *inter alia* the heirs or devisees in all cases in which the writ may have issued against such debtor immediately prior to his decease. There is no averment in the affidavit of any indebtedness by the deceased or that the defendants have assumed or otherwise owe a debt owing by the deceased."

If the legislature intended to permit attachment for a debt contracted by decedent's representatives subsequent to his death, provision therefor would have been incorporated in the law when the amendments of 1901 were added to section 5 of the act. And in this connection it is well to bear in mind the statement of the Supreme Court in *Little* v. *Long,* 93 *N. J. L.* 99; 107 *Atl. Rep.* 412, that:

██

"The proceedings [attachment] are statutory and out of the course of the common law, and result in taking the property of a defendant in an *ex parte* proceeding, *in invitum,* and therefore must be strictly pursued."

The Supreme Court, in *Young* v. *Potter Title and Trust Co.,* 114 *N. J. L.* 561 (at *p.* 565) ; 178 *Atl. Rep.* 177, stated:

"But this argument runs against * * * the well established rule that foreign administrators and foreign executors are not liable to be sued in their representative capacity in the courts of this state unless power to be sued has been conferred by statute. *Durie* v. *Blauvelt,* 49 *Id.* 114; *Green et al.* v. *Dolin,* 5 *N. J. Mis. R.* 1000; *Babbit* v. *Fidelity Trust Co.,* 70 *N. J. Eq.* 651.

It follows that the Attachment act of 1901 does not authorize the attachment of property of a foreign decedent for the debts of an executrix incurred after the death of the testator.

In order that attachment lie, the claim must be liquidated. *Sher* v. *Church,* 93 *N. J. L.* 73; 107 *Atl. Rep.* 57; *Heckscher* v. *Trotter,* 48 *N. J. L.* 419; 5 *Atl. Rep.* 581. The claim in the case *sub judice* is for services rendered and disbursements made. There was no agreement with respect to the amount that was to be paid. Plaintiff says the reasonable value of the services is $6,000. In this respect the case resembles *Skratt* v. *Carnera,* 12 *N. J. Mis. R.* 826; 175 *Atl. Rep.* 366, in which this court held the claim was not liquidated. The disbursements cannot be recovered unless it can be shown they were reasonably necessary in the furtherance of the investigation. The question of the amount due, if any, either for services or disbursements, cannot be determined without the intervention of a jury. *Jeffrey* v. *Wooley,* 10 *N. J. L.* 123. The claim in this case is not liquidated and attachment will not lie under the Attachment act.

For the foregoing reasons the writ of attachment should be quashed and the attachment proceedings dismissed. A rule may be entered accordingly.