## WESTERMAN v. GILBERT.
### Civ. No. 1542.

United States District Court
D. Rhode Island.
Dec. 30, 1953.

Gerald W. Harrington, Providence, R. I., for plaintiff.

Marshall Swan, Providence, R. I., for defendant.

CLIFFORD, District Judge.

This action comes before this Court on the Motion of the defendant, Henry I. Gilbert, filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the action.

The case involves an action for money loaned brought against the defendant, Henry I. Gilbert, a resident of the State of New York, by the plaintiff, Jack Westerman, a resident of the State of Rhode Island. The action was commenced by a writ of attachment, wherein the sheriff was ordered to attach the stock and shares of the defendant in the Hope Valley Dyeing Corporation, a Rhode Island corporation doing business in this State. Pursuant to this order, the sheriff made service upon the corporation purporting to attach the shares

of stock for which a certificate was outstanding in the hands of the defendant who was then in the State of New York. No personal service on the defendant was had, but a copy of the writ was mailed to the defendant's New York address by the sheriff, pursuant to the provisions of the General Laws of Rhode Island, 1938, Chapter 547, § 11.[1]

The plaintiff also applied for and received an order in aid of the writ of attachment, enjoining the defendant and the Hope Valley Dyeing Corporation from transferring on the books of the corporation any shares of stock standing in the name of the defendant. Said restraining order was served upon the corporation, and notice was given to the defendant by mailing to him an attested copy thereof, pursuant to the provision of Chapter 547, § 11, supra.

The defendant appeared specially by his attorneys for the purpose of contesting the jurisdiction of the Court and moved to quash the writ of attachment on the grounds, among others, that Chapter 118, § 13 of the General Laws of Rhode Island, 1938, had not been fully complied with.[2] Before action was taken on said motion, the defendant petitioned this Court for the removal of the action and of the bill in equity in aid of the purported writ of attachment from the State Court to this Court. The removal was ordered on March 12, 1953.

After removal the defendant filed a motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the action for lack of service, or, in lieu thereof to quash the amended return of service of the writ of attachment, previously allowed by the State Court.

Shares of stock in a corporation were made subject to attachment in this state by statute. Two such statutes have been cited to this Court, as previously noted. The first, Chapter 547, § 11, supra, came into the body of statute law with the adoption of the Court and Practice Act of 1905. It has appeared in substantially its present form in every revision of the General Laws of Rhode Island since

---

1. Chapter 547, § 11 of the Rhode Island General Laws, 1938, reads as follows:

   "Whenever a writ shall command the attachment of the shares of the defendant in any corporation * * * it shall be served by leaving an attested copy thereof, having indorsed thereon the date and time of day of such service, with the treasurer thereof, or the person executing the duties of the treasurer thereof, or with the attorney of the corporation appointed with authority to accept service of process against the corporation in this state, or with any other officer thereof, or with the agent or superintendent thereof, or at the office of such corporation with some person there employed, and shall tender to the person upon whom service is made the sum of $2.00 and his travelling fee as witness * * *; and the officer shall also leave an attested copy of the writ, so indorsed, with the defendant, or at his last and usual place of abode, with some person living there, or, if he have none within the precinct of the officer, the latter shall send the copy to the defendant by mail, post paid, if his address is known to or can be ascertained by the officer."

It should also be noted that Chapter 547, § 24 provides that, "(s)ubject to the provisions of [Sec. 13 of Chapter 118]," whenever a corporation is served with a copy of a writ attaching its stock of shares therein, certain specified officers shall give an account upon oath of what shares the defendant at that time had therein.

2. Chapter 118, § 13, of the Rhode Island General Laws (1938) reads as follows:

   "No attachment or levy upon shares or (sic.) stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."

   It should also be noted that Rhode Island Public Laws (1912), Chapter 840, § 24, provides as follows:

   "(*Inconsistent legislation repealed.*) All acts or parts of acts inconsistent with this act are hereby repealed."

that date. The second statute, adopting Section 13 of the recommended model of the Uniform Stock Transfer Act, was enacted in 1912 and is now referred to as Chapter 118, § 13 of the General Laws of Rhode Island, 1938.

Considering the two statutes involved herein, the basic issue before this Court is whether the defendant's interest in shares of stock of a Rhode Island corporation is subject to attachment in Rhode Island when both he and the certificate of said stock held by him are not within said state.

The plaintiff contends that, regardless of the Uniform Stock Transfer Act, the situs of the shares of stock of the corporation is in Rhode Island where it is domiciled and at no other place; that this is particularly true because the stock of the defendant is not fully negotiable;[3] that notwithstanding the absence of the defendant and the certificate of said stock, said stock was effectively attached by (1) service upon the corporation in compliance with Chapter 547, § 11 and (2) said corporation having been enjoined from transferring said stock on its books, in compliance with Chapter 118, § 13; that construed and applied in this manner, the two statutes are reconcilable; that the attachment of said stock in the State of Rhode Island is sufficient to confer jurisdiction in rem upon the State Courts and in turn upon this Court; and, therefore, the motion to dismiss should be denied.

The defendant, on the other hand, contends that by adoption of the Uniform Stock Transfer Act, the nature of the property in shares of stock has been entirely changed; that this enactment merged the shares of stock into the certificates; that the situs of the shares of stock is no longer at the domicile of the corporation but where the certificates are actually located; that Chapter 547, § 11 and Chapter 118, § 13, are not inconsistent, but provide that two separate and different processes must be served to effectuate an attachment; that said section 13 was not complied with because the certificate held by the defendant (1) was not actually seized, (2) not surrendered (3) or its transfer by the holder enjoined; that said section applies whether or not the certificate is fully negotiable; that because the defendant holding the certificate was out of this state, the purported service of both the writ of attachment and the order enjoining the defendant from transferring said certificate was without force or effect to subject him to the power and authority of either the State or Federal Court; and, therefore, the motion to dismiss should be granted.

■ This Court must follow the law of this State in removal proceedings of this nature. 28 U.S.C.A. § 1450.

■ It is important to note at the outset that shares of stock may have a situs in different jurisdictions for different purposes, at the same time. Thus, the situs of stock for purposes of taxation, distribution of a decedent's estate, attachment, garnishment, and execution may vary. The issue before this Court is limited to the consideration of the situs of stock *for purposes of attachment only*—namely, the proper place at which such stock is subject to attachment processes. See 122 A.L.R. 338, 339: Fletcher Cyclopedia Corporations, Perm.Ed. Vol. 11, Sec. 5101; 17 Cornel Law Quarterly 43. Unquestionably, prior to the passage of the Uniform Stock Transfer Act, the situs of shares of stock for the purposes of attachment and levy was at the domicile and usual place of business of the corporation and at no other place. Ireland v. Globe Milling & Reduction Co., 1895, 19 R.I. 180, 32 A. 921, 29 L.R.A. 429.

---

**3.** Excerpt from back of Stock Certificate
"The corporation has a lien on its stock for indebtedness due it from a stockholder, enforcible as provided in the By-Laws.
"The right to buy back its stock is provided in the By-Laws in favor of the corporation and of other stockholders than the one desiring to sell. Original stock not to sold before June, 1939, except as provided in By-Laws. Disposal of stock is regulated and limited as provided in the By-Laws."

358

Although the effect of section 13 of the Uniform Stock Transfer Act has never been decided by the Supreme Court of the State of Rhode Island,[4] the plaintiff contends that it has been the practice for lower state courts in Rhode Island to follow the procedure employed in the instant case. The plaintiff is undoubtedly correct in asserting that Federal Courts, under the Eire Doctrine, are bound to follow state law where "a goodly number of the trial courts of the state generally and for a considerable period of time have adhered to a common interpretation of (a) point. * * * " State of California, Dept. of Employment v. Fred S. Renauld Co., 9 Cir., 179 F.2d 605, 609. However, inasmuch as the able attorney for the plaintiff, having been afforded ample opportunity to provide evidence of a practice and a custom allegedly prevailing in the State Court relating to proceedings incidental to the attachment of stocks, was able to produce but two ex parte orders issued within a period of thirty-one years, this Court feels it is not unwarranted in concluding that this is far from "the goodly number" of trial courts adhering to this interpretation of the point at issue.

Other jurisdictions, however, have determined that section 13 of the recommended model Uniform Act, as adopted in Rhode Island, in effect necessitates the presence of the certificates of the shares of stock within the State before a valid attachment can be made of the stock unless, as provided by said section, the certificates are surrendered to the corporation which issued them, or the holder is enjoined from transferring them. Wallach v. Stein, 103 N.J.L. 470, 136 A. 209; Johnson v. Wood, 189 A. 613, 15 N.J. Misc. 150; Elgart v. Mintz, 123 N.J.Eq. 404, 197 A. 747; Elgart v. Mintz, 199 A. 68, 16 N.J.Misc. 289; Bloch-Daneman Co. v. J. Mandelker & Sons, 205 Wis. 641, 238 N.W. 831; Snyder Motor Co. v. Universal Credit Co., Tex.Civ.App., 199 S.W. 2d 792; Mills v. Jacobs, 333 Pa. 231, 4 A.2d 152, 122 A.L.R. 333; Knight v. Shutz, 141 Ohio St. 267, 47 N.E.2d 886, 150 A.L.R. 138.

According to these cited cases, the Uniform Stock Transfer Act has imparted such added value to the certificate, by increasing its negotiability, that the certificate is property within the meaning of attachment statutes and, having been merged, is considered to be the stock itself. Consequently, for the purposes of attachment, the situs of shares of stock is the place where the certificate is located.

By abrogating the general rule as to situs for attachment purposes, these cases are in harmony with the expression of the editors of the Restatement, Conflict of Laws, § 53, where they said:

"(3) To the extent to which the law of the State in which the corporation was incorporated embodies the share in the certificate, the share is subject to the jurisdiction of the state which has jurisdiction over the certificate." See Krizanek v. Smith, Del., 87 A.2d 871.

Furthermore, it has been held that since section 13, *supra,* specifies that it is the holder who is to be enjoined from transferring the certificate, an injunction restraining the corporation from transferring the share on its books is misdirected. Amm v. Amm, 117 N.J.Eq. 185, 175a, 186; Bloch-Daneman Co. v. J. Mandelker & Sons, 205 Wis. 641, 238 N.W. 831. See also Hodes v. Hodes, 176 Or. 102, 155 P.2d 564. As stated in Amm v. Amm, supra, 117 N.J.Eq. at page 187, 175 A. at page 187:

4. It is significant to note that other jurisdictions have, by appropriate legislation, either repudiated section 13 of the model Uniform Act or amended it so as to preserve their existing attachment statutes. As stated in State ex rel. North American Co. v. Koerner, 357 Mo. 908, 211 S.W.2d 698, 704: "We find from the opinions previously cited that at least

Massachusetts and California have repudiated Section 13 * * *. In varying degrees these other states have done the same, Colorado, Florida, Georgia, Kansas, and Montana. And it is clear that our [Delaware] legislature did not intend to adopt all of the provisions as proposed in the model Uniform Act."

"The statute requires an effectual injunction, and that, in this case, could have been accomplished only in the jurisdiction where it could be served and enforced. * * * And it is evident that the restraint upon the Standard Oil Company does not serve the levy under the statute, for it was not the holder of the certificates. * * *"

Without deciding whether chapter 547, § 11 and chapter 118, § 13 are inconsistent or reconcilable, this Court is of the opinion that section 13 of the Uniform Stock Transfer Act serves as a condition precedent to a valid attachment of shares of stock. Therefore, from the facts of this case, and in view of the decisions in Amm v. Amm, supra, and Bloch-Daneman Co. v. J. Mandelker & Sons, supra, the injunction against the Hope Valley Dyeing Corporation, restraining it from transferring on its books any stock standing in the name of the defendant, is not in compliance with the express terms of section 13. Accordingly, a valid attachment of the stock of the defendant in said corporation was not effected.

To support its contention that the effect of section 13, *supra,* is not to transfer the situs of shares of stock to the situs of the certificate, the plaintiff cites: Harvey v. Harvey, 7 Cir., 1923, 290 F. 653; McQuillen v. National Cash Register Co., D.C., 13 F.Supp. 53, affirmed on rehearing, D.C., 27 F.Supp. 639, affirmed, 4 Cir., 112 F.2d 877; Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652; Weinress v. Bland, 31 Del.Ch. 269, 71 A.2d 59; Hodson v. Hodson Corp., Del.Ch., 80 A.2d 180.

Although this Court is of the opinion that these cases are properly decided,[5] they are not in point. The Harvey and McQuillen cases, supra, are distinguish-

able on the basis that they involve questions relating to the title and transfer of shares of stock and not attachment proceedings. This distinction is clearly demonstrated in cases decided in the State of Wisconsin, one of which is subsequent to Harvey v. Harvey, supra, upon which the plaintiff principally relied, which deal directly with *attachment proceedings,* holding that the situs of stock for purposes of attachment under the Uniform Stock Transfer Act is at that place in which the certificate is located. Harbridge v. American Nat. Bank, 177 Wis. 206, 187 N.W. 853; Bloch-Daneman Co. v. J. Mandelker & Sons, supra.

As indicated, the plaintiff also cited in support of his contentions the Thompson, Weinress, and Hodson cases, supra. The Thompson case was decided approximately six years prior to the enactment of the Uniform Stock Transfer Act and is, therefore, not in point. The Weinress and Hodson cases, likewise, are not applicable because the State of Delaware by appropriate legislative action retained its original attachment statute notwithstanding section 13 of the Uniform Stock Transfer Act.

Likewise, the plaintiff's contention with respect to restrictions on the face of the certificate held by the defendant does not alter the conclusion reached by this Court. Section 13, *supra,* provides that no attachment shall be made except in the manner therein provided, without any reference or limitation to the negotiability of the certificate.

This Court finds therefore that the attachment of the defendant's interest in shares of stock of the Hope Valley Dyeing Corporation, made upon the corporation, was not in compliance with the provisions of Chapter 118, § 13 of the General Laws of Rhode Island, 1938, and the service of both the writ of attachment

---

5. As stated in 131 A.L.R. 197: "The rule that questions relating to title and transfer of corporate stock are to be governed by the law of the corporation's domicil is applicable in jurisdictions in which the Uniform Stock Transfer Act has been adopted. That act * * * does not change the General Rule that questions as to title and transfer must be determined by the law of the corporation's domicil. On the contrary, it in effect reiterates that rule." See also 39 H.L.R. 485, 487.

**360**

and the order to enjoin the transfer of said stock by the defendant was a nullity, without force or effect to subject the defendant to the power and authority of this Court.

It is therefore Ordered, Adjudged, and Decreed that the defendant's motion to dismiss the action be, and hereby is, granted, and that the Clerk of this Court make a docket entry dismissing the action.