2011 UT 82

**AEQUITAS ENTERPRISES, LLC,**
**Plaintiff and Respondent,**

v.

**INTERSTATE INVESTMENT GROUP,**
**LLC; and George A. Kastanes,**
**Defendants and Petitioner.**

No. 20090947.

Supreme Court of Utah.

Dec. 23, 2011.

Justin D. Heideman, R. Brett Evanson, Provo, for plaintiff.

Morgan Fife, Jamis M. Gardner, Provo, for petitioner.

Justice NEHRING, opinion of the Court:

¶ 1 Aequitas Enterprises, LLC, and Interstate Investment Group, LLC, entered into a real estate contract for the sale of 388 properties, all located outside the state of Utah. Aequitas subsequently sued Interstate Investment Group for breach of contract. To protect its interest in the properties, Aequitas also filed a motion requesting an extraterritorial prejudgment writ of attachment on all the properties. The district court granted Aequitas's motion for prejudgment writ of attachment and entered an order vesting title to all the properties in Aequitas. We hold that the district court lacked the requisite authority to enter an order directly affecting interests in real property located in other states. Therefore, we reverse the district court's decision and vacate its order.

## BACKGROUND

¶ 2 Aequitas Enterprises, LLC, is a limited liability company located in Provo, Utah. Interstate Investment Group, LLC, is a limited liability company located in South Carolina. In November 2008, Aequitas and Interstate entered into a contract for the sale of 388 real estate properties. The properties are located in twenty-eight states across the nation; none of the properties is located in Utah. Most of the properties are "Real Estate Owned," which typically refers to a property owned by a bank after an unsuccessful foreclosure sale. The parties' contract was a "bulk deal" in which Aequitas agreed to pay approximately $2.6 million in exchange for title to all the properties. Aequitas paid the amount due under the contract but claims that Interstate failed to deliver title to the properties as promised. Aequitas blames Interstate for this failure, and Interstate argues that its failure to deliver title to all the properties was due to reasons beyond its control.

¶ 3 In July 2009, Aequitas sued Interstate in personam for breach of contract. Aequitas sought damages and, to protect its interests in the properties, filed a motion for a prejudgment writ of attachment. Aequitas asked the court to attach all 388 properties and declare that title to the properties immediately vest in Aequitas. Aequitas argued that a prejudgment writ of attachment was necessary "to secure its place in the chain of title."

¶ 4 At a hearing on Aequitas's motion, Interstate argued that the court lacked jurisdiction to issue a writ on property located outside the territorial boundaries of the state. The trial court asked the parties to brief this issue. A few days later, Interstate moved to dismiss Aequitas's complaint, arguing that Interstate did not have sufficient

minimum contacts with the state of Utah and therefore the court lacked in personam jurisdiction. Complying with the court's request for full briefing, Interstate submitted a memorandum in opposition to Aequitas's motion for a prejudgment writ of attachment. Interstate asserted that an attachment proceeding is "in the nature of an in rem proceeding," and that a state only has jurisdictional power to attach property that is within the territorial limits of its jurisdiction.

¶ 5 The district court granted Aequitas's motion to attach the properties. In its findings, the district court concluded it had "jurisdiction to issue [the w]rit, even though the subject properties involved . . . may be located outside of the State of Utah." The district court did not explain how it reached this conclusion. The district court also vested legal title to all 388 properties in Aequitas effective immediately and authorized the manager of Aequitas "to sign warranty deeds or other records of conveyance on [Interstate]'s . . . behalf in order to facilitate transfer of legal documents conveying title for the 388 properties."

¶ 6 Interstate filed its petition for permission to appeal the interlocutory order and also moved the district court to rule on the question of personal jurisdiction, which it had not yet done. We granted the interlocutory appeal. Subsequently, the district court determined that Interstate had sufficient minimum contacts with the state of Utah, and that the court, therefore, had personal jurisdiction. Interstate has not appealed this ruling. We have jurisdiction under Utah Code section 78A–3–102(3)(j).

## ISSUE AND STANDARD OF REVIEW

■ ¶ 7 Interstate asks us to determine whether the district court erred when it issued prejudgment writs of attachment for real property located outside Utah. Any such authority stems from the Utah Rules of Civil Procedure.[1] A district court's interpretation of a rule of civil procedure presents a question of law that is reviewed for correctness.[2]

¶ 8 Interstate also asks us to determine whether the trial court erred when it granted an order allowing Aequitas to convey and deed Interstate's real property, vesting title in Aequitas. Because we conclude that the district court lacked the authority to issue the extraterritorial prejudgment writ of attachment, we necessarily conclude that the district court lacked authority to take the further step of vesting title to the properties in Aequitas. It is therefore unnecessary to address this issue.

## ANALYSIS

¶ 9 We begin by noting that the district court determined that it had personal jurisdiction over the parties and that Interstate has not appealed that decision. Instead, on appeal, Interstate asserts that a Utah court lacks in rem jurisdiction to attach extraterritorial property. Interstate cites our decision in *Employers Mutual of Wassau v. Montrose Steel Co.*,[3] in which we stated that " '[a] proceeding by which jurisdiction is sought by attaching property, whether tangible or intangible, such as a debt, is essentially a proceeding in rem; that is, a proceeding against a thing which is brought into the custody of the law and hence within the jurisdiction of the court.' "[4] We further explained that "[t]he court cannot adjudicate the liability of nonresidents *over whom it [has] not otherwise obtained jurisdiction* and who have no property within the state."[5] The relevance of that case to this one, however, is limited by its own language, which confines its scope to "proceeding[s] by which jurisdiction is sought by attaching property." In this case, the court *has* "otherwise obtained jurisdiction." Jurisdiction is not

---

1. *See* FED.R.CIV P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.").

2. *See Brown v. Glover*, 2000 UT 89, ¶ 15, 16 P.3d 540.

3. 559 P.2d 536 (Utah 1976).

4. *Id.* at 537 (quoting *Bristol v. Brent*, 36 Utah 108, 103 P. 1076, 1079 (1909)).

5. *Id.* at 538 (emphasis added).

sought by attaching the property; rather, in personam jurisdiction has been sought, obtained, and not challenged.

▇▇▇ ¶ 10 The distinction between in rem and in personam jurisdiction is critical:

A judgment in personam imposes a personal liability or obligation on one person in favor of another. A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him.[6]

In other words, if a court has jurisdiction over only the property, the case is an in rem proceeding and the court may act only on that property. By contrast, when a court has personal jurisdiction over the parties to a case, the court has jurisdiction to adjudicate the parties' interests in real property, even if the property is not located in that state.[7] Here, the court unquestionably has personal jurisdiction and therefore has the ability to order the parties to act on their property. The court would not, however, have in rem jurisdiction, because the property is not in Utah, and "[t]he basis of [in rem] jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State."[8]

▇▇▇ ¶ 11 Because no one disputes that the court has personal jurisdiction over these parties, the next question before us is whether the district court had authority to enter an extraterritorial prejudgment writ of attachment in a proceeding in which it had in personam jurisdiction over the parties. The authority to issue writs of attachment is grounded entirely in state law.[9] Utah's procedure for obtaining a writ of attachment

6. *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The parties have not used the term quasi in rem. For ease, we refer to in rem and quasi in rem collectively as in rem.

7. See *Massie v. Watts*, 10 U.S. 148, 160, 6 Cranch 148, 3 L.Ed. 181 (1810) ("[T]his court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."); *see also Fall v. Eastin*, 215 U.S. 1, 8, 30 S.Ct. 3, 54 L.Ed. 65 (1909) ("The territorial limitation of the jurisdiction of courts of a state over property in another state has a limited exception in the jurisdiction of a court of equity, but it is an exception well defined. A court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person. Whatever it may do through the party, it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to affect it with liens or burdens."); *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825, 831 (2009) ("[W]e hold that a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee."); *Johnson v. Johnson*, 68 A.D.3d 1685, 891 N.Y.S.2d 848, 850 (N.Y.App.Div.2009) ("While a divorce court in one state has no in rem jurisdiction over out-of-state real property and thus does not have the power directly to affect, by means of its decree, the title to real property situated in another state, a court with personal jurisdiction over the parties has equity jurisdiction over their rights with respect to foreign realty." (citations omitted) (internal quotation marks omitted)); *Groza–Vance v. Vance*, 162 Ohio App.3d 510, 834 N.E.2d 15, 24 (2005) (distinguishing between "a judicial conveyance of title, which directly affects title to property, and a court order against the persons over whom it has personal jurisdiction, which indirectly affects title to property and nothing that [w]ith respect to out-of-state property over which the court has no in rem jurisdiction, the former is impermissible while the latter is not."); *In re Marriage of Kowalewski*, 163 Wash.2d 542, 182 P.3d 959, 962–63 (2008) ("[A] court may indirectly affect title by means of an in personam decree operating on the person over whom it has jurisdiction.... We have long recognized the distinction between jurisdiction to adjudicate title to land and jurisdiction to settle the parties' personal interests in real estate.").

8. *Hanson*, 357 U.S. at 246, 78 S.Ct. 1228; *see also Kowalewski*, 182 P.3d at 962 ("[J]urisdiction in rem (directly over the thing itself) exists only in the state where the real property is located. Thus, a decree awarding real property located outside the state has no legally operative effect in changing legal title, except as provided by the law of the situs state.").

9. See FED.R.CIV.P. 64(a).

appears in Utah Rules of Civil Procedure 64 (Writs in general), 64A (Prejudgment writs in general), and 64C (Writ of attachment). "When interpreting a rule of civil procedure, we look to the express language of that procedural rule and to the cases interpreting it."[10]

¶ 12 Rule 64A(b) states that "[t]o obtain a writ of replevin, attachment or garnishment before judgment, plaintiff shall file a motion ... and an affidavit stating facts showing the grounds for relief and other information required by these rules."[11] The "grounds for relief" are enumerated in rules 64A(c) and 64C(b). Rule 64A(c) authorizes a prejudgment writ upon a showing of "all of the requirements listed in subsections (c)(1) through (c)(3) and at least one of the requirements listed in subsections (c)(4) through (c)(10)":

(c)(1) that the property is not earnings and not exempt from execution; and

(c)(2) that the writ is not sought to hinder, delay or defraud a creditor of the defendant; and

(c)(3) a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim; and

(c)(4) that the defendant is avoiding service of process; or

(c)(5) that the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors; or

(c)(6) that the defendant has left or is about to leave the state with intent to defraud creditors; or

(c)(7) that the defendant has fraudulently incurred the obligation that is the subject of the action; or

(c)(8) that the property will materially decline in value; or

(c)(9) that the plaintiff has an ownership or special interest in the property; or

(c)(10) probable cause of losing the remedy unless the court issues the writ.

¶ 13 Rule 64C(b) specifically addresses writs of attachment and requires all of the following:

(b)(1) that the defendant is indebted to the plaintiff;

(b)(2)(i) that the action is upon a contract or is against a defendant who is not a resident of this state or is against a foreign corporation not qualified to do business in this state; or

(b)(2)(ii) the writ is authorized by statute; and

(b)(3) that payment of the claim has not been secured by a lien upon property in this state.

¶ 14 Although these rules set forth many grounds for obtaining a writ of attachment, they offer no answer to the question of whether an attachment may be issued against extraterritorial property. The parties do not dispute that the rules are silent on this issue but they interpret that silence differently. Interstate argues that because the rules contain no language expressly permitting the issuance of extraterritorial writs of attachment, such writs are prohibited. Aequitas argues the opposite: that because the rules do not expressly prohibit the issuance of extraterritorial writs of attachment, such writs are allowable.

¶ 15 "When we interpret a procedural rule, we do so according to our general rules of statutory construction."[12] In addition,

[W]hen interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning. Additionally, we presume[ ] that the expression of one [term] should be interpreted as the exclusion of another. We therefore seek to give effect to omissions in statutory language by presuming all omissions to be purposeful.[13]

---

**10.** *Arbogast Family Trust v. River Crossings, LLC,* 2010 UT 40, ¶ 16, 238 P.3d 1035 (internal quotation marks omitted).

**11.** Utah R. Civ. P. 64A(b).

**12.** *Arbogast Family Trust,* 2010 UT 40, ¶ 18, 238 P.3d 1035.

**13.** *Marion Energy, Inc. v. KFJ Ranch P'ship,* 2011 UT 50, ¶ 14, 267 P.3d 863 (alterations in original) (internal quotation marks omitted).

Applying that same reasoning here, an initial reading of the rule suggests that the omission of language allowing for the issuance of extraterritorial writs was purposeful and therefore controlling.

¶ 16 Aequitas attempts to circumvent this gap by drawing on the language of other rules. Aequitas directs us to rule 64(a)(9), which defines "property" as "the defendant's property of any type not exempt from seizure. Property includes but is not limited to real and personal property...." [14] Aequitas also relies on rule 64C(a), which provides that "[a] writ of attachment is available to seize property in the possession or under the control of the defendant." [15] Aequitas argues that because neither of these provisions specifically limits property to property in Utah, we should not impose such a limitation.

■■■ ¶ 17 Aequitas's attempt to interpret one rule by drawing on other rules is well taken. Following our rules of statutory construction, "[w]e read the plain language of [our rules of civil procedure] as a whole and interpret [their] provisions in harmony with other [rules]." [16] Blunting Aequitas's argument, however, is rule 64(d)(1), which instructs "the clerk of the court [to] issue the writ [for seizure of real property] to the sheriff of the county in which the real property is located." [17] Utah courts and clerks have no authority to direct sheriffs of other states' counties to seize property. Rule 70 raises a similar problem: "If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment

has the effect of a conveyance executed in due form of law." [18] That rule says nothing about real or personal property not located in the state. Thus, because the controlling rules omit any reference to authority to issue extraterritorial writs of attachment, we must conclude that the omission was intentional and that no such authority exists.

■■■ ¶ 18 This interpretation is consistent with the questions of due process and comity that might arise if we were to issue extraterritorial writs of attachments. For example, the Full Faith and Credit clause found in Article IV, Section 1 of the United States Constitution would not require a sister jurisdiction to enforce a prejudgment writ of attachment; "[c]onstitutional full faith and credit attaches only to 'final' judgments," [19] which a prejudgment writ clearly is not.[20]

¶ 19 Our research indicates that few states have considered whether their courts are empowered to issue an extraterritorial prejudgment writ of attachment while having personal jurisdiction over the parties. The vast majority of cases addressing the issue have done so using in rem jurisdiction. Under somewhat different facts, the California Court of Appeals determined that a district court erred when it issued a prejudgment writ of attachment to the defendant's intangible personal property located outside California.[21] The court's rationale, among other points, was that "a California court lacks jurisdiction to command a sheriff, marshal, or constable in Florida or New Jersey to levy a California writ of attachment on a New Jersey company or a Florida bank." [22] The Federal District Court for the District of

14. Utah R. Civ. P. 64(a)(9).

15. *Id.* 64C(a).

16. *State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780 (first alteration in original) (internal quotation marks omitted).

17. Utah R. Civ P. 64(d)(1).

18. *Id.* 70.

19. *J.M.W. v. T.I.Z. (In re Adoption of Baby E.Z.,* 2011 UT 38, ¶ 8, 266 P.3d 702.

20. *See, e.g., Millcreek Manor Condo. Mgmt. Comm. v. Reventures Millcreek, LLC,* 2009 UT App 351U, para. 2, 2009 WL 4263527 (mem) (per curiam) (denying review of a prejudgment writ of garnishment for lack of jurisdiction because the prejudgment writ was not a final, appealable order).

21. *Pac. Decision Scis. Corp. v. Superior Court,* 121 Cal.App.4th 1100, 18 Cal.Rptr.3d 104, 107–08 (2004).

22. *Id.* at 109.

Maryland similarly determined that Maryland's laws and rules of civil procedure did not allow attachment of extraterritorial real property, bank accounts, and securities and commercial paper.[23] That court reasoned that "[t]he only stated limitations [of the rules of civil procedure] are that the court must act within the limits of its jurisdiction.... No particular elaboration is provided as to what the limits of a court's jurisdiction are, and therefore it is safe to assume that territorial limitations of the State are intended." [24] The court further reasoned that "[i]n contrast to Maryland's long-arm statute extending personal jurisdiction, no specific extension of jurisdiction is established under [the rules of civil procedure regarding writs]." [25]

¶ 20 In contrast, a federal district court in New Jersey upheld an extraterritorial prejudgment writ of attachment issued by a federal district court in Kentucky after concluding that the Kentucky statutes and rules of civil procedure *did* authorize such a writ.[26] Kentucky's attachment statute specifically addressed out-of-state property:

The plaintiff may, at or after the commencement of an action, have an attachment against the property of the defendant, including garnishees, as a security for the satisfaction of such judgment as may be recovered:

(1) In an action for the recovery of money against:

(a) A defendant who is a foreign corporation or nonresident of the state; or

. . . .

(f) Is about to remove, or has removed, his property, or a material

part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim, or the claims of said defendant's creditors ...

. . . .

(2) In an action for the recovery of money due upon a contract, judgment or award, if the defendant have no property in this state subject to execution, or not enough thereof to satisfy the plaintiff's demand, and the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found.[27]

¶ 21 The federal district court concluded "that extraterritorial application is appropriate if a plaintiff followed procedures for attaching a defendant's property." [28] Significantly, in that case, the court noted that the defendants raised several cases in which courts had concluded "that the remedy of attachment is limited to the borders of the state in which the rendering court sits." [29] But, the court wrote, "Defendants' cases miss the point.... Defendants' cases instead support the argument that whether a state's attachment statute applies beyond its borders is an individual inquiry into the controlling state's laws and precedent." [30]

¶ 22 We agree with the federal district court that such matters must be resolved on the basis of state rules of civil procedure, and conclude that our rules do not allow the issuance of extraterritorial writs of attachment. In the case before us, where the district court had undisputed personal jurisdiction over the parties, the attachment proceeding was not an in rem proceeding, but merely prejudgment relief aimed at property outside the state. Aequitas sought the writ

**23.** *Fed. Deposit Ins. Corp. v. Rodenberg,* 622 F.Supp. 286, 288 (D.Md.1985).

**24.** *Id.* (citations omitted).

**25.** *Id.* (citation omitted).

**26.** *Union Underwear Co. v. GI Apparel, Inc.,* No. 08–00124(WHW), 2008 WL 3833475, at *9 (D.N.J. Aug. 13, 2008).

**27.** Ky.Rev.Stat Ann. § 425.301 (West 2011).

**28.** *Union Underwear,* 2008 WL 3833475, at *5.

**29.** *Id.* at *6 (referring to *GM Gold & Diamonds, LP v. Fabrege Co.,* 489 F.Supp.2d 725, 728–29 (S.D.Tex.2007); *Rodenberg,* 622 F.Supp. at 288; *Temp. Servs. Ins. Ltd. v. O'Donnell,* No. 6:07–cv–1507–Orl–28GJK, 2008 WL 516717 at *7 (M.D.Fla. Feb. 22, 2008); *Lunger v. Page,* 16 N.J. Misc. 529, 2 A.2d 606, 607 (1938); *Johnson v. Wood,* 15 N.J. Misc. 150, 189 A. 613, 620 (1936); and *Nat'l Broadway Bank v. Sampson,* 179 N.Y. 213, 71 N.E. 766, 768 (N.Y.1904)).

**30.** *Id.*

as prejudgment relief in a breach of contract action—one that cannot be characterized as an action in rem. We conclude that such relief is not allowed by our rules of civil procedure.

¶ 23 Finally, we address Aequitas's concern that our decision will leave it without a remedy. As we have noted, a district court with personal jurisdiction can affect the rights of an out-of-state defendant by acting directly on the defendant. As stated in *Fall v. Eastin*, a "court, not having jurisdiction of the *res*, cannot affect it by its decree,"[31] but "by means of its power over the person of a party, a court of equity may, in a proper case, compel [a person] to act in relation to property not within its jurisdiction."[32] Aequitas can pursue any such remedies available under Utah law to protect its interests in the properties.

## CONCLUSION

¶ 24 We conclude that our rules of civil procedure do not authorize a district court to issue a writ of attachment on extraterritorial property. We therefore reverse the decision of the district court and direct it to vacate its order issuing the writ and its accompanying decision vesting title in Aequitas to the properties described in the parties' contract.

Justice NEHRING authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice LEE joined.

---

**31.** 215 U.S. at 10, 30 S.Ct. 3.

**32.** *Id.; see also Ralske v. Ralske*, 85 A.D.2d 598, 445 N.Y.S.2d 9, 10 (N.Y.App.Div.1981) (noting a court with "in personam jurisdiction over the parties ... had equity jurisdiction over their rights with respect to foreign realty"); *Groza–Vance*, 834 N.E.2d at 24 (noting a court has jurisdiction to enter an order "against the persons over whom it has personal jurisdiction, which indirectly affects title to property"); *Kowalewski*, 182 P.3d at 962 ("[A] court may indirectly affect title by means of an in personam decree operating on the person over whom it has jurisdiction. The power of a court to determine personal interests in real property located outside the state's territorial jurisdiction has been recognized in this country for nearly 200 years." (citations omitted)).