[No. G033648. Fourth Dist., Div. Three. Aug. 25, 2004.]

PACIFIC DECISION SCIENCES CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; MELVIN J. MAUDLIN, Real Party in Interest.

COUNSEL

White O'Connor Curry & Avanzado, Melvin N.A. Avanzado, John J. Lucas and Amanda M. Hammond for Petitioners.

No appearance for Respondent.

Meisenheimer Herron & Steele, Matthew V. Herron and Robert M. Steele for Real Party in Interest.

OPINION

**IKOLA, J.**—Petitioner Pacific Decision Sciences Corporation (defendant) seeks a writ of mandate compelling the trial court to vacate its February 17, 2004 order (the February 17 order) which requires defendant to deliver to the Orange County Sheriff "all funds existing at the time of service of this Order in any and all of its deposit accounts at Fidelity Federal Bank & Trust at 412 Lucerne Avenue, Lake Worth, Florida . . . or at any other location or branch of said bank existing outside of California." The February 17 order also requires defendant, "regardless of whether the payment is received in or out of California," to "deliver to the [Orange County] Sheriff all payments received from PSE&G,"[1] entities identified in the order as "sister companies headquartered in New Jersey," and to continue to comply with these directives "until the Sheriff is holding the full attachment amount of $2,132,500." We grant the petition and issue a peremptory writ of mandate commanding the trial court to vacate the February 17 order, and to issue a new order returning to defendant any funds held by the sheriff pursuant to the vacated order.[2]

---

[1] The order defined PSE&G as the collective entities Public Service Electric & Gas and/or Public Service Electric & Gas Energy Holdings and/or Public Service Electric & Gas Power LLC, also known as PSE&G and PSEG.

[2] The petition was filed on behalf of Pacific Decision Sciences Corporation, a California corporation, and PDS Acquisition Corporation, a Delaware corporation. The petition alleges, however, that in October 2000, Pacific Decision Sciences Corporation, the California corporation, merged with PDS Acquisition Corporation, the Delaware corporation, with PDS Acquisition Corporation becoming the surviving corporation. In October 2003, PDS Acquisition Corporation changed its name to Pacific Decision Sciences Corporation. The February 17 order also makes the finding that PDS Acquisition Corporation changed its name in October 2003 to Pacific Decision Sciences Corporation, and the order runs only against "PACIFIC DECISION SCIENCES CORPORATION aka PDS ACQUISITION CORP." Thus, it appears the former California corporation no longer exists, and, in any event, is not aggrieved by the February 17 order. Thus, we dismiss the petition of Pacific Decision Sciences Corporation, a California corporation, and consider only the petition of the aggrieved party, Pacific Decision Sciences Corporation, a Delaware corporation.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Melvin J. Maudlin (plaintiff) brought an action against defendant, alleging he was the beneficiary of an agreement called the "Pacific Decision Sciences Corporation Secular Trust" which required defendant to pay plaintiff $2,750,000 at the rate of $10,000 per month until fully paid. Plaintiff further alleged defendant had anticipatorily repudiated the agreement in April 2003, and had quit making payments in June 2003.

Some four weeks after he filed the complaint, plaintiff filed and served a noticed application for a right to attach order and an order for issuance of a writ of attachment. The application sought to attach any property of defendant for "which a method of levy is provided" to secure a total amount of $2,132,500. Defendant opposed the application with a perfunctory one-page legal argument. On January 13, 2004, the court granted the right to attach order, and ordered issuance of a writ of attachment in the amount requested by plaintiff.[3] The right to attach order is not challenged in this proceeding, and we assume for present purposes it was properly issued.

Without giving notice of *any* kind to defendant, plaintiff returned to court on February 17, 2004, and requested the court to: (1) Amend the right to attach order and order for issuance of a writ of attachment to identify the "attachment debtor" as "PACIFIC DECISION SCIENCES CORPORATION aka PDS ACQUISITION CORP."; and (2) issue a turnover order requiring defendant to turn over to the Orange County Sheriff funds in the Florida deposit account and all payments defendant received from the PSE&G entities, whether the payments were received in California or elsewhere. The court issued the order as plaintiff requested. One week later, defendant found out about the February 17 order and promptly filed its own ex parte application (after giving one day advance telephonic and facsimile notice) requesting the court to quash it. The court denied the request, and defendant filed the instant petition for a writ of mandate.

We ordered plaintiff to show cause why the February 17 order should not be vacated.[4] Pending further order of this court, we stayed enforcement of the February 17 order, on condition the sheriff maintain any funds previously

---

[3] The issuance of the writ was conditioned upon plaintiff posting a $10,000 undertaking pursuant to Code of Civil Procedure section 489.220. All further statutory references are to this code unless otherwise stated.

[4] The order to show cause erroneously refers to the order amending the right to attach order instead of the turnover order. This mistaken reference arose because plaintiff's application in the trial court requested both the amendment of the right to attach order to change the name of the defendant and the turnover order. Briefing by the parties reflects they correctly interpreted our order to show cause as referring to the turnover order.

delivered to him pursuant to the order, and enjoined defendant from withdrawing any funds from the accounts identified in the February 17 order.

## DISCUSSION

The Attachment Law (§ 481.010 et seq.) does not authorize an order like the February 17 order. And because plaintiff has not shown his legal remedy to be inadequate, the February 17 order cannot stand as an ordinary injunction. The February 17 order must be set aside.

*The Court Acted in Excess of Its Jurisdiction Under the Attachment Law*

"The Attachment Law statutes are subject to strict construction, and where a court is required to exercise its jurisdiction in a particular manner or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction and void." (*Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1168 [67 Cal.Rptr.2d 555].) Here, the court exceeded its authority under The Attachment Law.

Plaintiff relies on section 482.080 as authority for issuance of the February 17 order. But that reliance is seriously misplaced. Section 482.080, subdivision (a) provides: "If a writ of attachment is issued, the court may also issue an order directing the defendant to transfer to the levying officer either or both of the following: [¶] (1) Possession of the property to be attached if the property is sought to be attached by taking it into custody. [¶] (2) Possession of documentary evidence of title to property of or a debt owed to the defendant that is sought to be attached. An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter."

██ The purpose of a turnover order issued pursuant to section 482.080 is to compel defendant to cooperate with the levying officer when the levy must be made by taking possession of the property or documentary evidence of title to property or of a debt. (See Cal. Law Revision Com. com., 15A West's Ann. Code Civ. Proc. (1979 ed.) foll. § 482.080, p. 35.) Section 482.080, subdivision (a) plainly conditions the issuance of a turnover order on the issuance of a writ of attachment. Put differently, a naked turnover order is not authorized. And because a turnover order is issued in *aid* of a writ, and not as an independent order, it must order defendant to transfer possession of the attached property or documentary evidence of the attached property to the levying officer to whom the writ of attachment is directed. After all, that is the officer who will need defendant's cooperation when the levy requires a transfer of possession.

██ The Attachment Law does not allow a plaintiff to select just any levying officer. Instead, section 488.020, subdivision (a) requires a writ of

attachment to "be directed to a levying officer *in the county in which the property of the defendant described in the writ may be located.*" (Italics added.) Since the levying officer must be located in the same county in which the property to be levied upon is located, it follows that the turnover order in *aid* of the writ must direct defendant to transfer possession of the attached property to that same levying officer, i.e., the levying officer in the county where the property is located. Here, the February 17 order identifies the Sheriff of Orange County, California as the levying officer to whom defendant must deliver the property. But, as we will show, the Sheriff of Orange County, California is not the proper levying officer because the property plaintiff seeks to attach with the assistance of the turnover order is not located in Orange County, California.

■ The type of property sought to be attached determines its location. For purposes of The Attachment Law, an "account receivable" is an "account" as defined in California Uniform Commercial Code section 9102, subdivision (a)(2), and a "deposit account" is a "deposit account" as defined in California Uniform Commercial Code section 9102, subdivision (a)(29). (§§ 481.030, 481.080.) An account receivable is "a right to payment of a monetary obligation" that is not evidenced by chattel paper or an instrument. (Cal. U. Com. Code, § 9102, subd. (a)(2).) A deposit account is "a demand, time, savings, passbook, or similar account maintained with a bank" that is not evidenced by an instrument. (Cal. U. Com. Code, § 9102, subd. (a) (29).) An "instrument," for purposes of The Attachment Law, is defined in California Uniform Commercial Code section 9102, subdivision (a)(47). (§ 481.117.) With some exceptions, an instrument "means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation . . . of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." (Cal. U. Com. code, § 9102, subd. (a)(47).)

Plaintiff's application for the February 17 order did not make any showing, nor did he contend, that an instrument evidenced either the Florida bank account or the PSE&G receivable. Thus, the Florida bank account is an intangible deposit account, and defendant's right to receive payments from PSE&G is an intangible account receivable, both as defined in The Attachment Law.

But it is unclear how the PSE&G payments, as described in the February 17 order, should be characterized. Before each payment is made, the right to receive the payment is an account receivable. If PSE&G makes payment by electronic transfer directly into one of defendant's deposit accounts, the received payment becomes part of the deposit account and remains an intangible. If payment is made by check or money order payable to defendant's order, the received payment is in the form of an instrument while in

defendant's possession, but if deposited in defendant's bank account, it becomes part of a deposit account. If the check is cashed for money, the money becomes defendant's tangible personal property.

The February 17 order requires defendant to deliver "payments received from PSE&G," and it is in the form of a continuing order, requiring delivery of "all payments" until the sheriff holds the full amount of $2,132,500. As a continuing order, it more closely resembles the garnishment of an account receivable rather than an order requiring delivery of tangible property. Accordingly, we will first determine the geographic location of the Florida bank account and the PSE&G "payments" as though both were intangibles—an account receivable owed to defendant by a New Jersey debtor, and a deposit account in a Florida bank, both as defined in The Attachment Law.

It has long been the rule in California that "an intangible, unlike real or tangible personal property, has no physical characteristics that would serve as a basis for assigning it to a particular locality. The location assigned to it depends on what action is to be taken with reference to it." (*Estate of Waits* (1944) 23 Cal.2d 676, 680 [146 P.2d 5].) "When . . . the issue, as in this case, involves jurisdiction to compel the obligor to pay one claimant and not a competing claimant, 'the debt or claim is usually regarded as having a situs in any state in which personal jurisdiction *of the debtor* can be obtained.' " (*Waite v. Waite* (1972) 6 Cal.3d 461, 467–468 [99 Cal.Rptr. 325, 492 P.2d 13], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561], italics added.) That is the case here. Plaintiff and defendant are competing claimants to the right to be paid the money on deposit in the Florida bank and owed by the PSE&G entities. The Florida bank and the PSE&G entities are the obligors or debtors in this analysis and their location is considered the location of the intangible property plaintiff seeks to reach.

■ Accordingly, under The Attachment Law, a writ of attachment to reach this intangible property would need to be issued to levying officers in Florida and New Jersey, not in Orange County, California. (§ 488.020.) But, of course, a California court lacks jurisdiction to command a sheriff, marshal, or constable in Florida or New Jersey to levy a California writ of attachment on a New Jersey company or a Florida bank. And without a writ of attachment being issued to a levying officer who can levy the writ, the court lacks authority under section 482.080 to issue a turnover order in aid of the writ.

■ The February 17 order cannot stand for yet another reason. Section 482.080, subdivision (a) does not authorize a turnover order for this *type* of property, i.e., an account receivable and a deposit account. We are not here

concerned with levying on "documentary evidence of title to property of or a debt owed to the defendant." (§ 482.080, subd. (a)(2).) The only other *type* of property that can be the subject of a turnover order is "property . . . sought to be attached by taking it into custody." (§ 482.080, subd. (a)(1).) The Attachment Law does not authorize a levy of attachment on an account receivable or a deposit account by taking the account into custody. Nor could it. These are intangible assets incapable of being taken into physical custody. ▮ The only types of property that may be attached by the levying officer taking the property into custody are: "tangible personal property in the possession or under the control of the defendant" (§ 488.335); chattel paper (§§ 488.435, subd. (a), 700.100, subd. (a)(1)); instruments (§§ 488.440, 700.110, subd. (a)(1)); negotiable documents of title (§§ 488.445, 700.120, subd. (a)); and certain types of securities (§ 488.450; Cal. U. Com. Code, § 8112, subd. (a)). Unlike these tangible assets and documentary evidence of tangible and intangible assets, deposit accounts and accounts receivable are attached by service of the writ on the financial institution or the account debtor, *not* by taking any property into custody. (§§ 488.455, subd. (a), 488.470, subd. (a).) Accordingly, section 482.080, subdivision (a)(1) does *not* authorize the issuance of a turnover order in aid of a writ levied against a deposit account or an account receivable.

Of course, if the writ of attachment were to be levied against checks or money orders received from PSG&E while they were still in defendant's possession, a turnover order could properly order defendant to turn over these instruments, provided the order was in aid of a valid and enforceable writ of attachment that was levied against the *instruments*. But here, the turnover order commands defendant to turn over the received payments (in unspecified form) to the Sheriff of Orange County, California "whether the payment is received in or out of California." Again, the Orange County Sheriff cannot levy on an instrument located outside of California, and the turnover order issued in aid of such a purported levy is, at least to that extent, overbroad and invalid.

Our conclusions in this matter follow readily from the plain language of section 482.080, subdivision (a), but are confirmed by the comments of the Law Revision Commission regarding both the original 1974 statute and its 1976 amendment. Concerning the original enactment of section 482.080, the Law Revision Commission stated: "Section 482.080 is new. It makes clear that the court has power to issue a 'turnover' order directing the defendant to cooperate in transferring possession. Such order is not issued in lieu of a writ but rather in addition to or in aid of a writ." (Cal. Law Revision Com. com., *supra*, foll. § 482.080, p. 35.) Concerning the 1976 amendment, the Law Revision Commission stated: "Section 482.080 is amended to make clear that an order may be issued under subdivision (a)(1) *only* where the property is sought to be attached by taking it into custody. See, e.g., Sections 488.320 (tangible personal property in possession of defendant),

488.380 (a)(2) (chattel paper in possession of defendant). The enforcement of such an order is not appropriate where the property sought to be attached is in the possession of a third person or is levied upon by notice. See, e.g., Sections 488.330 (tangible personal property in possession of third person), 488.380 (a)(1) (chattel paper in possession of third person)." (Cal. Law Revision Com. com., *supra*, foll. § 482.080, p. 35, italics added.)

*The Turnover Order Cannot Stand as a Preliminary Injunction*

Plaintiff also argues that because the court has personal jurisdiction over defendant, it could enter an injunction, independent of The Attachment Law, commanding defendant to turn over property in another state. The point is not well taken. The application to the trial court was presented as a request for a turnover order pursuant to The Attachment Law, without any notice to defendant, and plaintiff now argues the ex parte procedure was justified because defendant had already had its day in court when it opposed the issuance of a right to attach order. But these procedures are not compatible with appropriate procedures for injunctive relief, and substantive grounds for injunctive relief were not established.

■ Prior notice is *always* required before the court issues a preliminary injunction. (§ 527, subd. (a).) Even a temporary restraining order requires prior notice unless it is shown by affidavit that great or irreparable injury will result before the matter can be heard on notice, and even under that circumstance, informal notice is required except under the most extreme circumstances. (§ 527, subd. (c).)

■ Substantively, before a court may issue a nonstatutory injunction as a provisional remedy for breach of contract, it must appear that monetary relief would not afford adequate relief or that it would be extremely difficult to ascertain the amount of damages. (§ 526, subd. (a)(4) & (5); *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 306 [63 Cal.Rptr. 148].) ■ No such showing was made in this case. To the contrary, because plaintiff had obtained a right to attach order, he presumably had persuaded the court his claim was based on a breach of contract and that the amount of the claim was "fixed or readily ascertainable." (§ 483.010, subd. (a).) And plaintiff made no showing whatever that defendant will not be able to respond in damages in the event a final judgment is rendered against it. Accordingly, there is no basis on which the turnover order can stand as a preliminary injunction.

## DISPOSITION

The petition for writ of mandate is dismissed as to Pacific Decision Sciences Corporation, a California corporation. The petition for writ of mandate by Pacific Decision Sciences Corporation, a Delaware corporation, formerly known as PDS Acquisition Corporation, is granted. Let a writ of mandate issue directing the superior court to vacate its "ORDER TO DE-LIVER PROPERTY TO THE SHERIFF" filed on February 17, 2004. The writ of mandate shall also direct the superior court to order any and all funds that may be held by the sheriff as a result of the February 17, 2004 order released forthwith to defendant. This court's order to show cause, having served its purpose, is discharged. The conditions on the stay order issued by this court on March 9, 2004, that the sheriff maintain control of any property turned over to him pursuant to the February 17, 2004 order, and enjoining defendant from withdrawing funds from the accounts listed in that order, are vacated.

Defendant shall recover its costs incurred in this proceeding.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.