Filed 5/15/24  Pre-Banc Business Credit v. Vector Resources CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PRE-BANC BUSINESS CREDIT, INC., Plaintiff and Respondent, v. VECTOR RESOURCES, INC., Defendant and Appellant. | G062129 (Super. Ct. No. 30-2021-01194584) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael J. Strickroth, Judge.  Affirmed.

Lanak & Hanna and Mac W. Cabal for Defendant and Appellant.

LimNexus, Bryan King Sheldon and Bethany J. Peak for Plaintiff and Respondent.

\*          \*          \*

Plaintiff, Pre-Banc Business Credit, Inc. (Pre-Banc), sought and obtained a right to attach order and an order for issuance of a writ of attachment against Vector Resources, Inc. (Vector). The application for right to attach order (application) was based on an assignment of accounts receivables Pre-Banc obtained from the John B. Rudy Company, Inc. (Rudy). One of Rudy's debtors was Vector. Vector claims the trial court erred in granting the application for a litany of reasons. Finding none of the contentions have merit, we affirm.

FACTS

Pre-Banc is an asset-based lender that provides financing to businesses. In exchange for the financing, borrowers assign their accounts receivables to Pre-Banc. Pre-Banc then notifies the account debtors to pay any outstanding or future invoices directly to Pre-Banc. Rudy assigned its accounts receivables to Pre-Banc in exchange for financing. In turn, Pre-Banc notified Rudy's account debtors, one of which was Vector, of the assignment. The notice stated, "[Rudy] has assigned all payments for present and future invoices directly to Pre-Banc," "California law requires that your payment be made directly to Pre-Banc," and "[p]ayment made directly to [Rudy] does not discharge your obligation to pay Pre-Banc . . . ." Pre-Banc contends that, despite receiving this notice, Vector continued to make payments directly to Rudy.

As part of its efforts to collect these funds, Pre-Banc sought a right to attach order and a writ of attachment against Vector. In support of its application, Pre-Banc submitted a copy of the notice sent to Vector, purchase orders between Vector and Rudy, invoices from Rudy to Vector, and checks dated after it sent the notice reflecting payments made from Vector to Rudy. Pre-Banc's chief executive officer (CEO) attested to the authenticity of the notice. Pre-Banc's attorney affirmed he received the purchase orders, invoices, and checks from Vector during discovery.

2

Vector opposed the application claiming it did not receive notice of the assignment until months after Pre-Banc contends it was sent, the notice did not reasonably identify the rights assigned or amounts due, Pre-Banc did not authenticate the notice, and, regardless of the assignment, its payment obligations were satisfied. As to the notice, Vector provided a declaration from its accountant declaring Vector did not receive notice of the assignment when Pre-Banc claims to have sent it. Rather, it was not until months later that Vector received any notice of the assignment. Further, Vector asserted the evidence Pre-Banc submitted was inadmissible because Pre-Banc's attorney could not lay the foundation for the purchase orders, invoices, and payments since he lacked the requisite personal knowledge.

A few days before the hearing on the application, the court issued a tentative ruling which mistakenly noted the application was unopposed. Prior to oral argument, Vector brought this issue to the court's attention and the court issued a revised tentative ruling. Following oral argument, the court took the matter under submission, affirmed its revised tentative ruling, overruled most of Vector's evidentiary objections, and issued a writ.

On appeal, Vector raises the following errors: (1) the trial court did not apply the proper standard of review to the application; (2) Pre-Banc did not prove it timely notified Vector of the assignment; (3) Pre-Banc did not authenticate the notice; (4) the notice did not reasonably identify the rights assigned or amounts due; (5) the assignment was conditional; (6) the court erred in ruling Vector did not satisfy its payment obligations; (7) the court did not fairly review the evidence; (8) the court relied on inadmissible evidence; and (9) the court's evidentiary rulings were unlawfully illogical. Each contention is without merit. We affirm the order of the court.

DISCUSSION

*The Trial Court's Standard of Review*

Vector argues the trial court "fail[ed] to apply the appropriate strict standard of review" in ruling on the application. According to Vector, the law requires the trial court to apply a "stringent standard[] of review in analyzing the evidence." As we explain, Vector is mistaken. Although courts interpret the attachment *statutes* strictly, that standard does not apply to the court's review of the *evidence*.

A. Statutory Interpretation and Statutory Application

Attachment law is a pure creature of statute. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476.) Because attachment involves the taking or seizing of property, the statutes are subject to the strictures of the Fourteenth Amendment due process clause. (*Sniadach v. Family Finance Corp.* (1969) 395 U.S. 337, 342.) Thus, when interpreting the bounds of the court's statutory authority, we do so strictly. (*Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1106.) If Vector asked us to decide if the statutes authorized a specific court action, we would strictly interpret the statute confining the court's powers therein. But Vector's appeal does not raise that type of question. Rather, its complaint lies with the trial court's review of the facts and the court's purported failure to apply "the stringent standards of review *in analyzing the evidence*." (Italics added.) Vector does not cite to any legal authority, nor are we aware of any, directing the trial court to "strictly" review the evidence or to review the evidence in any particular manner, outside of looking to Pre-Banc as the burden carrier. (*Western Steel & Ship Repair, Inc. v. RMI, Inc.* (1986) 176 Cal.App.3d 1108, 1113-1114.) Accordingly, if substantial evidence supports the trial court's factual determinations, we affirm.

4

*Vector's Factual Challenges*

To obtain a right to attach order and writ of attachment, Pre-Banc bore the burden of proving: "(1) The claim upon which the attachment is based is one upon which an attachment may" issue; (2) "the probable validity of the claim"; (3) the attachment is not sought for an improper purpose; and (4) "[t]he amount to be secured . . . is greater than zero." (Code Civ. Proc., § 484.090, subd. (a).) "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Code Civ. Proc., § 481.190.) In the context of the assignment at issue here, to establish probable validity of its claim, Pre-Banc must prove it notified Vector of the assignment, it authenticated the notification, and the notification reasonably identified the rights assigned. (Cal. U. Com. Code, § 9406, subds. (a), (b).)

Vector raises a host of factual issues. It claims the court erred in ruling: (1) Pre-Banc timely notified it of the assignment; (2) Pre-Banc authenticated the notice; (3) the notice reasonably identified the rights assigned; (4) the notice identified the amounts due or to become due; (5) the assignment was not conditional; and (6) Vector did not satisfy its payment obligations. We address each contention in turn.

1. Standard of Review

When reviewing a trial court's factual decisions, we do so under the substantial evidence standard. (*Chino Commercial Bank, N.A. v. Peters* (2010) 190 Cal.App.4th 1163, 1169.) We decide whether there is substantial evidence, contradicted or uncontradicted, to support the trial court's determination, as it is not our function to decide the facts. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) In measuring the "substantiality" of the evidence, we review the entire record on appeal. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 328.) If the entire record has substantial evidence in support of the appealed judgment or order, we affirm despite the record also having substantial contrary evidence. (*Ibid.*)

5

We note "substantial evidence" is not synonymous with "any" evidence. (*Colombo v. BRP US Inc.* (2014) 230 Cal.App.4th 1442, 1451-1452.) The substantial evidence rule "does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment." (*Pinto v. Farmers Insurance Exchange* (2021) 61 Cal.App.5th 676, 689.) "'[S]ubstantial'" means the evidence ""must be of *ponderable legal significance* . . . it must be *reasonable* . . . , *credible*, and of *solid value* . . . ."" (*Ibid.*, italics added.) Thus, we focus on the *quality*, not the *quantity*, of the evidence, i.e., little solid evidence may be "substantial," while a lot of weak evidence may be insubstantial. (*Newland v. County of Los Angeles* (2018) 24 Cal.App.5th 676, 684.) We indulge all reasonable inferences we can deduce from the evidence in support of Pre-Banc, but "[w]hile substantial evidence may consist of inferences, such inferences must be a product of logic and reason and must *rest on the evidence*. . . . " (*Pinto,* at p. 689.)[1]

### 2. Pre-Banc's Assignment Notification

Vector's first factual contention challenges the trial court's ruling that Pre-Banc timely notified it of the assignment. In making this ruling, the court primarily relied on a letter Pre-Banc sent to Vector via fax, e-mail, and United States mail. Vector

---

[1] Vector contends a "correct application of the substantial evidence test requires a clear understanding of the burden of proof." Although Vector does not explicitly state, the implication is Pre-Banc's burden of proof in the trial court affects our review of the evidence. That would be true if the court ruled Pre-Banc did *not* carry its burden and *Pre-Banc* appealed. In that situation, we could only reverse if the evidence compelled a finding in Pre-Banc's favor. It would be wrong, in that situation, to make Vector point to substantial evidence in the record when it bore no burden to produce any evidence in the first place. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) That is not the situation here. Vector is appealing from the court's ruling that Pre-Banc did carry its burden. Therefore, the substantial evidence standard applies, and we affirm if substantial evidence supports the trial court's conclusions.

argues the court erred because its accountant attested that it did not receive this notice until months later and, thus, it appropriately paid Rudy.

A letter, properly addressed and mailed, is presumed received in the ordinary course of mail. (Evid. Code, § 641.) "As is true of most presumptions affecting the burden of producing evidence, this one is an expression of common experience, one in which the presumed fact (receipt of that which was mailed) is so likely to be true that the law requires it to be assumed in the absence of contrary evidence." (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.) Thus, this presumption compels the court to assume the presumed fact true unless and until the proponent submits sufficient contrary evidence. (*Ibid.*) If the opposing party produces such evidence, the trier of fact decides the existence of the fact from all the evidence without regard to the presumption. (*Ibid.*) This does not mean the trier of fact must ignore the otherwise logical inferences from the circumstance which gave rise to the presumption in the first place. (*Ibid.*)

Here, Pre-Banc's CEO attested Pre-Banc sent the notice to Vector via United States mail, e-mail, and facsimile. There is no dispute the address listed on the letter is Vector's address.[2] In response, Vector submitted evidence it did not receive the notice until months later. Thus, the trial court had to decide whether Vector received the notice when Pre-Banc claimed, without regard to the presumption. The law requires the trial court to resolve such factual conflicts and its resolution of conflicting evidence, if supported by substantial evidence, binds this court. The trial court made a credibility determination and accepted Pre-Banc's evidence. Its CEO's declaration, coupled with the logical inference that mail, properly addressed, is timely received, is substantial

---

[2] In support of its opposition to the application, Vector offered the declaration of its accountant and a return green card receipt. Its accountant confirmed the address on the green card was Vector's address. This address matched the address listed on the notice Pre-Banc mailed.

evidence to support this ruling. Vector's contrary evidence, even if substantial, does not require us to rule in its favor.

### 3. Pre-Banc's Authentication of the Notice

Next, Vector argues Pre-Banc did not authenticate the notice because it "contains no signature or other 'electronic sound, symbol, or process.'"[3] In the context of California Uniform Commercial Code section 9406, authentication means to "sign," which broadly includes "any symbol executed or adopted with present intention to adopt or accept a writing." (Former Cal. U. Com. Code, § 1201, subd. (b)(37).)[4] "'[A] complete signature is not necessary. Authentication may be printed, stamped, or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead.'" (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 277.) "No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with

---

[3] This is a slightly different examination than the traditional authentication analysis we apply in reviewing the admissibility of writings under the Evidence Code. California Uniform Commercial Code section 9406 requires either Pre-Banc or Rudy to authenticate the notice, which means Pre-Banc must show the notice came from it or Rudy. (*Id*., subd. (a).) Neither party addresses the standard of review appropriate to such an issue. As this is an element of Pre-Banc's claim, we presume, without deciding, that it is substantial evidence. We note the result would be the same, even if it were the abuse of discretion standard traditionally applied to evidentiary rulings.

[4] Effective January 1, 2024, the Legislature amended California Commercial Code section 9406 changing the word "authenticated" to "signed." (Stats. 2013, ch. 531, § 14.) It similarly amended the definition of "signed" in California Commercial Code section 1201. (Stats. 2023, ch. 210, § 1.) For purposes of this decision, we focus our analysis on the versions of the statutes in effect at the time Pre-Banc sent its notice.

present intention to adopt or accept the writing." (Cal. U. Com. Code Comment, West's Ann. Cal. Code, (2023 ed.) § 1201, subd. 37.)

Here, Pre-Banc sent the notice on its letterhead which depicts Pre-Banc's full business name and logo. The notice identified Pre-Banc as the author and sender, and it clearly labeled Pre-Banc's address, Web site, and phone number. It is universally known that the purpose of a letterhead is to associate a writing or document with the company, business, or brand. (*Donovan v. RRL Corp., supra*, 26 Cal.4th at p. 277.) For this purpose, formal business correspondences commonly include letterheads, so the recipient knows who the document comes from. (*Ibid.*) The contents of the notice represent substantial evidence that Pre-Banc authored and sent the notice.


### 4. Identification of the Rights Assigned

Vector challenges the court's ruling that the notice reasonably identified the rights assigned. Vector argues Pre-Banc's omission of the assignment agreement between Rudy and Pre-Banc in the notice is fatal. We disagree. The notice makes clear that Rudy had "outsourced capital funding of all their invoices to Pre-Banc Business" and "assigned all payments for present and future invoices directly to Pre-Banc . . . ." The notice further explained that the law required Vector to now make all payments directly to Pre-Banc.

Contrary to Vector's assertion, the law only requires a reasonable identification of the rights assigned as it pertains to the account debtor's obligations. It need not describe the assignment with specificity. (Cal. Code com., 23B pt. 2 West's Ann. Cal. U. Com. (2024 supp.) foll. § 9406, p. 199.) Any ambiguity in the identification of the rights falls on the account debtor to clarify, not the assignee. (Cal. U. Com. Code, § 9406; Cal. Code com., 23B pt. 2 West's Ann. Cal. U. Com. (2024 supp.) foll. § 9406, p. 199.)

### 5. Conditional Assignment[5]

Vector argues it was under no obligation to pay Pre-Banc directly because the assignment was conditional, relying on *St. Paul Fire & Marine Ins. Co. v. James I. Barnes Const. Co.* (1963) 59 Cal.2d 691. In *St. Paul Fire*, a subcontractor agreed to perform services for the defendant, a general contractor. (*Id.* at p. 693.) Plaintiff insurance company supplied a surety bond to the defendant, paid by the subcontractor. (*Ibid.*) As part of the bond, the subcontractor agreed to assign all rights to payment owed from the defendant to the plaintiff, but only in the event the subcontractor breached or did not perform; otherwise, all payments for work performed belonged to the subcontractor. (*Ibid.*) The plaintiff sued when the defendant made payments to the subcontractor, despite receiving notice of the assignment. (*Ibid.*) The court held the plaintiff had no right to the funds because the assignment was conditional, not absolute. (*Id.* at p. 702.) The funds belonged to the plaintiff only if the subcontractor breached. (*Ibid.*) Unless and until that event occurred, the funds belonged directly to plaintiff. (*Ibid.*)

Vector does not cite to the actual assignment agreement to support its argument. Instead, it cites to an e-mail exchange between it and Rudy. In the e-mail, Vector asked Rudy to confirm payments were to go to Pre-Banc's address. Rudy responded, "Confirmed. Please update your mailing address in your system. But do not mail the check. Let us know when you have a check ready for pick up. We will be by." There are no conditions on the assignment noted in this e-mail. Vector does not explain how this exchange shows otherwise. If anything, this e-mail confirms the fact of the assignment, that Vector knew of the assignment, and that all payments belong to Pre-Banc. There is no evidence that the assignment was conditional.

---

[5] Vector did not state this argument in a separate heading or subheading. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Despite this error, we exercise our discretion to decide the issue.

### 6. Identification of the Amount Due

Next, Vector argues the notice fails to identify "the amount due or to become due." For the notice to be effective, it must state "that the amount due or to become due has been assigned . . . ." (Cal. U. Com. Code, § 9406, subd. (a).) Here, the notice communicates that "[Rudy] has assigned all payments for present and future invoices directly to Pre-Banc . . . ." Vector contends this is insufficient because Pre-Banc must identify the *specific* dollar amount due or to become due in the notice. We disagree.

The language of the statute is clear. It provides that "an account debtor . . . may discharge its obligation by paying the assignor until [it] receives a notification, signed by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee." (Cal. U. Com. Code, § 9406, subd. (a).) The statute does not restrict the language "amount due or to become due" to a specific dollar amount. As we discussed, the law does not require Pre-Banc to notify Vector of the assignment with specificity. (Cal. Code com., 23B pt. 2 West's Ann. Cal. U. Com. (2024 supp.) foll. § 9406, p. 199.) Rather, the law entitles Vector to *notice of the assignment*, not notice of the outstanding debt amount. Consequently, the notice adequately informed Vector "that the amount due or to become due has been assigned . . . ."[6] (Cal. U. Com. Code, § 9406, subd. (a).)

### 7. Vector's Payment Obligations

Vector asserts that, even if it did receive a timely authenticated notice, it already paid Rudy and, thus, its obligations to Pre-Banc are satisfied. In support, it points

---

[6] Vector also contends that the "amounts claimed by Pre-Banc are flat wrong." Vector did not state this argument in a separate heading or subheading. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Nor does Vector develop this argument with appropriate citations to legal authority. Therefore, it forfeits the argument. (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 879, fn. 12.)

to the assignment agreement between Pre-Banc and Rudy, which states that any amount Rudy collects on accounts assigned to Pre-Banc belong to Pre-Banc and Rudy must immediately transmit them to Pre-Banc.  This language defines Rudy's obligations to Pre-Banc; it does not govern Vector's obligations to Pre-Banc.  Absent an agreement between Vector and Pre-Banc, the law dictates Vector's obligations.  And the law is clear that after notice, Vector cannot discharge its obligations to Pre-Banc by paying Rudy. (Cal. U. Com. Code, § 9406, subd. (a).)

*Vector's Evidentiary Contentions*

Next, Vector argues the court relied on inadmissible evidence.  Vector takes specific issue with a series of exhibits Pre-Banc's attorney attached to his declaration. These exhibits included purchase orders from Vector to Rudy, invoices from Rudy to Vector, checks from Vector to Rudy, and handwritten notes contained thereon.  Pre-Banc's attorney attested these were "true and correct copies of documents produced by Vector in this matter . . . ."  Vector raised 15 objections to the admission of these documents on the grounds Pre-Banc's attorney did not have the personal knowledge necessary to authenticate them and that they are inadmissible hearsay.  The trial court overruled 14 of the 15 objections.[7]

1.  Standard of Review

We apply the abuse of discretion standard of review to any trial court ruling on the admissibility of evidence.  (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)  Discretion refers to the sound judgment of the court, which it must exercise according to the rules of law.  (*Nuño v. California State University,*

---

[7] The court sustained one objection to a chart Pre-Banc's attorney created summarizing the payments and calculating the interest due.  We discuss this objection more fully below.

12

*Bakersfield* (2020) 47 Cal.App.5th 799, 813.) Thus, discretion in the literal sense is different from discretion in the legal sense. When exercising a grant of discretion, the court must still adhere to applicable legal criteria and cannot act arbitrarily. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

### 2. Authentication

Before a court may receive a writing into evidence, its proponent must offer sufficient evidence to authenticate it. (Evid. Code, § 1401, subd. (a).) This means the proponent must introduce sufficient evidence to sustain a finding that the writing is what the proponent claims it to be. (Evid. Code, § 1400.) "[W]hat is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible.'" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267.)

The proponent can authenticate the writing in several ways and the law does not require the testimony of a subscribing witness. (Evid. Code, § 1411.) "[A] writing may be authenticated by its contents and circumstantial evidence, including the testimony of witnesses *other than* the person or persons who created the writing or witnessed its creation." (*People v. Cruz* (2020) 46 Cal.App.5th 715, 729.)

Here, the contents of the documents, the fact they were in Vector's possession, and the fact Rudy is Vector's business partner amounts to sufficient evidence to sustain a finding of authentication. The documents offered as belonging to Vector have indicia indicating Vector created them, such as Vector's business name, address, and logo. Vector maintained and produced these documents, which adds an additional layer of authentication that Vector created them. Furthermore, they describe business transactions between Vector and Rudy — Vector's admitted business partner.[8]

---

[8] Vector's accountant admitted in his declaration that Rudy is Vector's business partner.

13

The documents offered as belonging to Rudy contain similar indicia, such as its business name, address, and logo. They similarly describe transactions between Vector and Rudy. And they were in Vector's possession which indicates Vector relied on them as authentic. That they may not reflect the amount *ultimately* paid or the dates the transactions *actually* occurred is not the issue. Pre-Banc offered the documents for what they depicted within their four corners: payments made by Vector to Rudy within the period depicted in the documents. Disputes as to whether the transactions went through on those dates or for those amounts go to the document's weight, not its admissibility. (*People v. Cruz, supra*, 46 Cal.App.5th at p. 729.)[9]

Vector's cited cases do not change our conclusion. In *Tri-State Mfg. Co. v. Superior Court* (1964) 224 Cal.App.2d 442, the document at issue was an unsworn attorney attestation given in support of an application for substituted service on a foreign corporation. (*Id.* at p. 444.) Such an application requires a sworn declaration that the foreign corporation is subject to California jurisdiction and the proponent cannot personally serve the corporation. (*Id.* at p. 443.) The attorney submitting the unverified statement simply reviewed an office file and did not have personal knowledge of the foreign corporation's activities in California. (*Id.* at pp. 444-445.) This was woefully insufficient to support such an application. (*Id.* at p. 445.) These facts differ from ours, which pertain to business documents between business partners.

---

[9] Vector also argues the authentication issue goes to when it received notice of the assignment. Pre-Banc's attorney's declaration included as an exhibit a notification letter Rudy sent, but the court did not rely on that letter. The court relied on the notice Pre-Banc's CEO authenticated, which is a letter directly from Pre-Banc. Regardless, Pre-Banc authenticated the documents included in its attorney's declaration, including the letter from Rudy.

14

In *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, also cited by Vector, the evidence at issue consisted of handwritten notes offered as belonging to the defendant.  However, no one signed the notes and there was no other evidence from which to conclude the defendant authored them.  (*Id.* at p. 855.)[10]

### 3.  Pre-Banc's CEO's Declaration

Vector alleges that "[Pre-Banc's CEO] attached documents to [his] declaration[] for which [he] had no knowledge" and cites to a little less than 300 pages of exhibits it takes issue with.  Pre-Banc's CEO supplied a detailed declaration in support of these exhibits consisting of 26 paragraphs, not including subparts, seven pages, and multiple exhibits.  Vector does not cite to any specific part of the declaration it contends is insufficient to authenticate the exhibits.

It is Vector's burden to "'affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error.'"  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.)  An untailored argument aimed at the whole of a lengthy and detailed declaration, without targeting specific objectionable portions, is not enough to carry that burden.  We are not required to, nor are we inclined to, search the record to discover whether it contains support for Vector's claim.  Therefore, Vector forfeits the point.  (*Ibid.*)

---

[10] Vector also raises an issue with some of the documents that have handwritten notations.  Alterations to writings, such as handwritten notes, need not be separately authenticated if not made by the proponent of the evidence.  (Evid. Code, § 1402.)  Here, the documents came from Vector or Rudy and Pre-Banc did not offer them as made by Pre-Banc.  Accordingly, Pre-Banc is not under an obligation to authenticate the alterations in any manner separate than the authentication of the document itself.

### 4. Vector's Hearsay Objections

Similarly, Vector makes general contentions that the documents are inadmissible hearsay.  However, Vector does not specify why we, on appeal, should rule the trial court abused its discretion as to any specific exhibit or item of evidence.  As noted, general contentions, without more, do not carry Vector's burden.  Vector forfeits this claim.[11]

### 5. The Court's Evidentiary Rulings

Lastly, Vector takes issue with the court's evidentiary rulings which, according to its argument, were "baffling and without reason."  In support, Vector contends the court overruled 14 of its 15 objections and did not give the legal basis for its ruling.  Vector further supports this by arguing the court inexplicably excluded a chart Pre-Banc's attorney prepared while admitting the underlying documents which formed the foundation for the chart.  Vector does not support its arguments with any citations to legal authorities nor does it provide this court with any lawful basis for relief.  Therefore, Vector forfeits the argument.  (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)[12]

---

[11] In its reply brief, for the first time, Vector cites to *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, a case that discussed the business records hearsay exception.  However, its failure to develop the point in its opening brief with meaningful legal analysis supported by citations to authority and facts in the record forfeits the claim entirely.  (*Bunzl Distribution USA, Inc. v. Franchise Tax Bd.* (2018) 27 Cal.App.5th 986, 998.)

[12] For the first time in its reply brief, Vector develops the argument with a citation to *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243.  As we noted, it is too late to do so.  (*Bunzl Distribution USA, Inc. v. Franchise Tax Bd., supra*, 27 Cal.App.5th at p. 998.)  Even if it were not, *Nazir* is not helpful to Vector.  In *Nazir*, the trial court sustained 763 out of 764 objections without explanation.  (*Nazir*, at p. 250.)  Over 250 of the sustained objections failed to cite the evidence objected to, some did not

DISPOSITION

The order is affirmed.  Pre-Banc is entitled to recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


GOODING, J.

---

assert a basis for objection, some were not to evidence, and many were frivolous.  (*Id.* at p. 256.)  Further, sustaining 763 objections, without providing the evidentiary grounds for doing so, prevents an appellate court from meaningfully reviewing the trial court's reasoning.  (*Id.* at p. 255.)  Overruling objections and admitting evidence, as the court did here, presents no similar issue as the court is necessarily ruling that each objection is without merit.