Filed 8/27/24  Kapoor v. Halaby CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| KENNY KAPOOR, | B326168 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV21303) |
| v. | |
| ZALFA HALABY et al., | |
| Defendants and Appellants; | |
| CLIFFORD B. SULLIVAN, | |
| Defendant, Cross-Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Reversed.

Miller Miller Gerber, Jonathan L. Gerber and Corey A. Miller for Defendants and Appellants.

Anderson, McPharlin & Conners, Vanessa H. Widener and Ali Z. Vaqar for Defendant, Cross-Defendant and Respondent.

_____

# INTRODUCTION

Beginning in June 2020 and continuing through December 2022, Kenny Kapoor on the one hand and Charles Elkins and Zalfa Halaby (Elkins/Halaby) on the other were adverse parties in related multi-party lawsuits arising from Kapoor and Elkins/Halaby's jointly undertaken real estate investments through their limited liability company, South Shore LLC (South Shore). During the pendency of these actions (the South Shore lawsuits) and through transactions that Elkins/Halaby contend were fraudulent, Clifford Sullivan acquired title to a property occupied by Elkins/Halaby as their personal residence and filed an unlawful detainer action against them. In this context, the trial court, notwithstanding its finding that the evidence did not support a "reasonable probability" that Sullivan would prevail in his action against Elkins/Halaby, issued a pretrial order, requiring Elkins/Halaby to pay Sullivan $11,147 monthly. The mandated monthly payment substantially exceeded the fair rental value of the property, as well as Sullivan's underlying claim for relief, and was based on Sullivan's uncorroborated statement of his monthly mortgage obligation on the property.

The trial court's order cites only Code of Civil Procedure section 1170.5[1] and is improper under that statute, but even if the order were understood to be predicated on an unstated invocation of injunction principles more generally, the requisite showing of likelihood of success is lacking, the order exceeds Sullivan's claim for relief against Elkins/Halaby, and any

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

damages incurred by Sullivan are readily quantifiable. Accordingly, we reverse.

FACTS AND PROCEDURAL HISTORY

I.    **The South Shore Entity, the Agreement to Transfer the Hacienda Ranch from South Shore to an LCC Owned by Elkins/Halaby, and the Inadvertent Transfer to a Suspended, Unrelated Entity**

In approximately 2017, Kapoor and Elkins/Halaby formed South Shore as a vehicle for real estate investments. Notwithstanding South Shore taking title, Elkins/Halaby contributed approximately $420,000 toward South Shore's purchase of the Hacienda Ranch, and thereafter contributed an aggregate of approximately $275,000 to the property's rehabilitation, mortgage, and homeowners' association payments.

On March 17, 2020, South Shore entered into a written agreement to transfer the Hacienda Ranch to Ekins/Halaby or their assignee. On May 1, 2020, South Shore recorded a quitclaim deed transferring the Hacienda Ranch to "Rez Properties, LLC, a California limited liability company" (Rez California). The transferee name was an error: Elkins/Halaby intended to hold title in the name of Rez Properties, a Texas limited liability company. By apparent coincidence, there was an existing California limited liability company named Rez Properties, LLC

In December of 2020, for reasons unclear from the record, South Shore was in arrears on the Hacienda Ranch mortgage loan. On December 14, 2020, the lender recorded a notice of default  and, on March 14, 2021, scheduled a foreclosure sale to take place the next month. Elkins/Halaby reached an agreement to bring the loan current and avert foreclosure, pursuant to which

3

they were to pay South Shore's lender two installments of $350,000 each, with the final payment due June 4, 2021. Elkins/Halaby completed the initial payment of $350,000 on May 17, 2021, and the lender postponed foreclosure.

## II. Sullivan's Self-Designation As the Manager of the Incorrectly Named LCC and His Resulting Acquisition of the Hacienda Ranch

On May 17, 2021, Sullivan filed a Statement of Information for Rez California with the Secretary of State's office, identifying himself as its manager and agent for service of process. The next day, acting for Rez California, Sullivan executed a quitclaim deed transferring Hacienda Ranch back to South Shore, describing the transaction as a "bonafide gift." In turn, on May 24, 2021, Kapoor, acting for South Shore, executed a grant deed transferring Hacienda Ranch to Sullivan. In connection with his acquisition of Hacienda Ranch, Sullivan entered into a financing agreement with DML Capital Mortgage Fund, including a loan in the amount of $825,000. Sullivan's purchase price for Hacienda Ranch was reduced by the $350,000 that Elkins/Halaby had recently paid South Shore's lender and Sullivan's "purchase" of Hacienda Ranch extinguished South Shore's outstanding obligation to its own lender. Elkins/Halaby continued living at Hacienda Ranch following Sullivan's ostensible acquisition of the property.

## III. Sullivan's Unlawful Detainer Action Against Elkins/Halaby and His Subsequent Request for an Injunction Requiring Elkins/Halaby to Pay Him a Monthly Sum Equal to His Alleged Mortgage Obligation

4

On November 4, 2021, Sullivan filed an unlawful detainer action, naming as defendants Elkins and any other person residing at Hacienda Ranch. In his verified complaint, Sullivan declared the amount in controversy did not exceed $10,000, and his only requested relief was possession of the property. Sullivan did not request money damages of any kind. On November 22, 2021, the trial court stayed Sullivan's unlawful detainer action, finding the case related to the South Shore lawsuits.

On November 16, 2022 – more than a year after filing his unlawful detainer complaint – Sullivan filed a motion asking the trial court to order Ekins/Halaby to pay him "at least" $11,147.64 per month, a sum equal to his asserted monthly mortgage payment on the Hacienda Ranch. In support of his motion, Sullivan cited the trial court's authority under sections 128, subdivision (a) and 525, and declared he was the legal owner of Hacienda Ranch while Elkins/Halaby continued to live there without paying rent, and further claimed that he could not afford to continue carrying the property unless Elkins/Halaby paid to occupy it. Sullivan estimated that the fair rental value of the property was $8,600 per month, and that his monthly payment to his lender was $11,147. Elkins/Halaby opposed the motion, arguing that Sullivan had "unclean hands," that there was no direct evidence of the amount of his monthly mortgage obligation, and that Sullivan could not show a likelihood of success as required for an order of pretrial payment of rent under section 1170.5.

## IV. The Trial Court's Order Granting Sullivan's Motion

On December 14, 2022, the trial court held a hearing on several matters in the South Shore cases, including Sullivan's motion. The trial court agreed with Elkins/Halaby that motions

for pretrial payment of rent are governed by section 1170.5, subdivision (c) and that that the evidence did "*not* disclose a probability that Sullivan [would] prevail in obtaining clear title" as required for an order of pretrial rent under that code section. The trial court observed several impediments to Sullivan demonstrating a likelihood of success on the merits, including: Elkins/Halaby had fair claim to title based on the contract of sale, the May 1, 2020 deed, and their own payments on the previous mortgage. The trial court further observed that Sullivan was on notice of the Elkins-Halaby claim, given (a) the existence of two lis pendens, (b) the express written warning from counsel for Elkins/Halaby days *before* the sale closed, and (c) Sullivan's own filing of papers posing as the manager of REZ California for the sole purpose of recording a gift deed that transferred the residence back to South Shore to facilitate his own acquisition. The trial court also observed that Rez California had been suspended by the Franchise Tax Board since 2011 and that Sullivan had not cured the suspension.

Notwithstanding these obstacles, the trial court found that through Sullivan's "purchase of the property" he "paid debts that were owed by Elkins/Halaby," and therefore conferred a "windfall" on them, in the amount of $482,191.84 that "Elkins/Halaby would otherwise have to pay." Alluding to what the trial court, earlier in the hearing, described as a "welter of entities and claims" in the multi-party South Shore cases, the trial court commented, "The absolute last thing this case needs is a defaulted mortgage that results in an aggrieved lender entering the fray to seek foreclosure."

6

Following these observations, the trial court ordered Elkins/Halaby to pay $11,147 monthly to the trust account of Sullivan's counsel and in turn ordered disbursement of the funds for payment of Sullivan's asserted mortgage obligation on the Hacienda Ranch.

The trial court entered its written order on December 16, 2022. Elkins/Halaby filed a timely notice of appeal.

## DISCUSSION

Sullivan's failure to show a likelihood of success on the merits of his unlawful detainer action against Elkins/Halaby requires reversal of the trial court's order, regardless of whether the order was made under section 1170.5 or preliminary injunction principles more generally.

## I. Standard of Review

"[T]he decision whether to grant a preliminary injunction is reviewed for an abuse of discretion" (*Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925), and factual findings underlying the court's ruling are reviewed for substantial evidence. (*Integrated Dynamic Solutions, Inc. v. VitaVet Labs, Inc.* (2016) 6 Cal.App.5th 1178, 1184.) If the trial court abused its discretion in weighing either the balance of harms or the plaintiff's likelihood of success on the merits, we must reverse. (*Carsten* v. *City of Del Mar* (1992) 8 Cal.App.4th 1642, 1649.)

## II. The Trial Court Exceeded Its Discretion in Ordering Elkins/Halaby to Pay $1147 per month to Sullivan's Counsel During the Pendency of Litigation

*1. The Failure to Demonstrate Likelihood of Success on the Merits Renders the Order Improper Under Section 1170.5*

We agree with the trial court's own assessment that ordering Elkins/Halaby to pay rent to Sullivan during the pendency of the unlawful detainer action would be improper under section 1170.5 in light of Sullivan's inability to demonstrate a likelihood of success on the merits. In addition to the trial court's own observations regarding the impediments to Sullivan's claims, we note that the trial court's directive was that Elkins/Halaby pay Sullivan the monthly sum of $11,147 even though, by Sullivan's own declaration, the fair rental value of the Hacienda Ranch was approximately $8600. In sum, the order for Elkins/Halaby to pay $11,147 monthly during the pendency of the unlawful detainer action exceeded the trial court's discretion under section 1170.5.

*2. Reversal Is Also Required if the Order Is Viewed as Having Been Made Under General Principles Governing Preliminary Injunctions*

The order directing Elkins/Halaby to pay $11,147 monthly during the pendency of trial also exceeded the trial court's discretion under general preliminary injunction principles. Before exercising its discretion to issue a preliminary injunction, the trial court "must consider 'two interrelated factors,' specifically, the likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by defendants . . . if it does. [Citation.]" (*King v. Meese*

8

(1987) 43 Cal.3d 1217, 1226.)  All of the trial court's observations regarding Sullivan's inability to show a likelihood of success on the merits (as required for an order of pretrial payment of rent under § 1170.5) likewise show failure to meet the threshold requirement for a preliminary injunction.  Nor does the record show that the balance of harms tipped in Sullivan's favor. Although the trial court commented that Sullivan was paying debts owed by Elkins/Halaby, the record shows that the debt was in fact owed by South Shore, and that any windfall benefited both South Shore (by having its debt paid) and Sullivan (by reducing his purchase price by $350,000).

Moreover, the entire series of transactions facilitating Sullivan's acquisition of the property would have been impossible in the absence of a clerical error.  In addition to the observations of the trial court that Sullivan "just happened to [seize] upon a clerical error in a deed," the record indicates that "Rez California," the unintended transferee after the clerical error, was suspended by the Franchise Tax Board, thus making the quitclaim prohibited by Revenue and Taxation Code section 23302, subdivision (d), which states that a suspended taxpayer "shall not be entitled to sell, transfer, or exchange real property in California during the period of forfeiture or suspension."

We further note that Sullivan made no showing that his damages were either inadequate or unascertainable.  Before a trial court may issue a nonstatutory injunction as a provisional remedy, it must appear that monetary relief would not afford adequate relief or that it would be extremely difficult to ascertain the amount of damages.  (§ 526, subds. (a)(4) & (a)(5); *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 306.)  "Put another way, if the legal remedy of

9

compensatory damages is adequate to do complete justice between the parties, 'a proper exercise of equitable jurisdiction will not give equitable relief.' [Citation.]" (*ZF Micro Solutions, Inc. v. TAT Capital Partners, Ltd.* (2022) 82 Cal.App.5th 992, 1000-1001.)

Sullivan's declaration, and the trial court's order awarding him a fixed monthly sum, belie any concern that money damages would not be an adequate remedy or cannot readily be ascertained. Accordingly, there is no basis on which to issue a preliminary injunction ordering Elkins/Halaby to pay money. (See *Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1110 [turnover order cannot stand as a preliminary injunction, where the amount of damages was readily ascertainable and was in fact determined by the court that issued the order].)

Finally, we observe that the order exceeds Sullivan's claim for relief. " ' "The scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits." ' " (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1463.) Here, the scope of the preliminary injunction bears no resemblance to Sullivan's claim for relief. Sullivan's only pleading seeking relief is his unlawful detainer complaint filed in November of 2021. That complaint alleges that the amount in controversy is less than $10,000, and the only relief sought is possession of the property. Thus, separate and apart from the dubious merits of Sullivan's claims, the injunction exceeds Sullivan's claims for relief as well as his own estimate of the fair rental value of the Hacienda Ranch.

## DISPOSITION

The trial court's December 16, 2022 order directing Elkins/Halaby to pay $11,147 monthly to the trust account of Sullivan's counsel is reversed.  Elkins/Halaby are awarded their costs on appeal.


DAVIS, J.*

WE CONCUR:


BAKER, Acting P. J.


KIM, J.

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.